THE BELLEVILLE AND ILLINOISTOWN RAILROAD COMPANY, Plaintiff in Error, *v.* RICHARD A. GREGORY AND WIFE, Defendants in Error.

#### ERROR TO ST. CLAIR.

In seeking for the intention of the legislature, as expressed in any portion of a law, it is proper to examine the whole law.

The grant of a right to a railroad company to extend to and unite with any other railroad in this State, gives a general authority to extend to any other road within the prescribed limits.

If one part of a law is designed to limit or explain another, it must appear to have been framed with that intention.

That provision of the constitution which declares that no private or local law shall be passed which embraces more than one subject, which must be expressed in the title, cannot be evaded by declaring such an act to be a public law.

A law which authorizes the construction of a railroad, with a branch or extension, the purchase of land, and the making of coal beds thereon, and the purchase or lease of a ferry franchise, embraces but one subject.

THIS was an action of trespass brought by Gregory and wife against the railroad company, for entering upon the lands of Gregory, making embankments thereon, &c. The company by plea in defence, set up the grant by the legislature, the appointment of commissioners under the law to procure a condemnation of the right of way over the lands in question, the tender of the damages assessed, the refusal to accept, &c., and that the company entered upon the lands, as they lawfully might, &c. To this plea a demurrer was filed.

The cause was heard before UNDERWOOD, Judge, at August term, 1853, of the St. Clair Circuit Court. The demurrer was sustained; the plaintiff below waived the execution of a writ of inquiry, and took judgment for one cent damages, and costs.

The railroad company brought the cause to the Supreme Court.

G. KOERNER, for plaintiff in error.

S. BREESE, for defendants in error.

CATON, J.   The first section of the charter creates the " Belleville and Illinoistown Railroad Company " a body politic and corporate.   The second section authorizes the company to construct a railroad from Belleville to Illinoistown.   The third section contains a grant of powers necessary for the execution of the work.   The fourth section provides that the company may obtain the right of way, in case of disagreement with the owners, in the mode prescribed by the act relating to the rights of way approved March 3d, 1845.   This section, however, subsequently provides that the governor shall appoint three commissioners to assess the damages to the owners of lands, &c. taken for the road, and it requires the commissioners to deliver their award to the company, " to be recorded by said corporation in the circuit clerk's office of St. Clair county," when the title to the land thus condemned shall be vested in the corporation, provided that notice of the intention of the company to apply to the governor for the appointment of the commissioners shall be first published for thirty days in some newspaper printed in St. Clair county.   This section also provides, that the taking of an appeal shall not affect the possession of the company, and that no appeal by the owner of the land shall be allowed, or writ of error prosecuted, unless the owner shall stipulate that the company may enter upon and occupy the land " upon said company giving bond and security, to be approved by the clerk of the circuit court of the county of St. Clair, that they will pay to the party appealing or prosecuting such writ of error all costs and damages that may be awarded," &c.   The fifth section fixes the capital stock of the company at one hundred thousand dollars, with authority to the stockholders to increase it to the amount expended on said road.   The sixth and seventh sections provide for a board of directors, their election, meetings, &c.   The eighth section requires the office of the company to be located in the city of Belleville.   The ninth, tenth, and eleventh sections relate to the mode of operating the road.   The twelfth section provides for crossing other roads, watercourses, &c.   The thirteenth section relates to dividends.   The fourteenth authorizes the company to purchase land and to work the coal beds therein, and for that pur-

pose they may buy out other companies or lease their tracks, rights, and privileges, " and may make, have, use, and maintain any and all branch roads by said company deemed necessary in transacting their business, condemning all lands and ways therefor as herein above provided." This section also authorizes the company to purchase or lease a ferry franchise. The fifteenth section authorizes the city of Belleville and the county of St. Clair to subscribe stock in the corporation. The sixteenth section prescribes penalties for injuring the road, &c.

The seventeenth section is one under which the company claim the right to extend their road to and unite it with the Chicago and Mississippi Railroad at or near the city of Alton, and is in these words : —

" Said company shall have the power to extend to and unite its road with any other railroad now constructed, or which may hereafter be constructed in this State, and for that purpose full power is hereby given to said company to make and execute such contract with any other company as will secure the objects of such connection."

The two remaining sections authorize the company to borrow money and limit the time within which the road shall be completed.

Upon the construction of this seventeenth section, must depend the decision of the question now presented. In seeking for the intention of the legislature as expressed in any portion of a law it is eminently proper to look into the whole law, as one portion may frequently be designed to extend, qualify, or limit another portion. Hence I have stated the substance of the whole act, so far as it can possibly affect this question.

It is undoubtedly true, that the primary object of the legislature in the passage of this charter, and that which was most in their contemplation, was to provide for and secure the construction of a railroad from the city of Belleville to Illinoistown. The details of the bill are framed with direct reference to that object. To induce this, the rights, privileges, and franchises specified in the charter, were granted to the corporation. These constitute the consideration offered to the company to induce them to construct the work, and for these the public was to derive a benefit in the use of the road. By accepting the charter, the company became obliged to construct the road between the two specified points, at all events, and the legislature in the charter said, if you will do this, you may, if you choose, extend your road beyond the specified location. This right to extend as well as the right to charge tolls, was undoubtedly designed as an inducement to secure the construction of the road as

specified. The one is as sacred a right as the other, and secured by the same contract, and it is as much our duty to protect it. The same may be said of the right to purchase and hold coal lands, to work the coal-mines, and to build "branch roads." The question is, how far did the legislature agree that the company might extend their road? The charter gives this answer: "Said company shall have the power to extend to and unite its railroad with any other railroad now constructed, or which may hereafter be constructed, in this State." To undertake to prove by argument what is the meaning of this provision, is to me like an attempt to demonstrate by reasoning, how many inches there are in a foot. The authority to extend is general, to any other road, with this restriction, that the other road shall be "in this State." The expression of this limitation shows how far it was the design of the legislature that this power should be limited. Otherwise the expressed limitation was worse than useless. It is certainly possible that the legislature intended to grant the right to extend this road to and unite it with any other road which the company might select, within the prescribed limits; and if such was their design, what more appropriate language than this could have been used to express that intention? Grant the possibility of such an intention, and we are forced to the conclusion that they did so intend, unless in some other part of the act they have expressed a further limitation, showing a different intention. A very ingenious effort was made, upon the argument, to show from other provisions of the charter, that the legislature did not mean what they said, but that something less was intended; that they intended to restrict the limits of the right to extend within the county of St. Clair. I will notice all of the clauses of the charter relied on to establish this limitation.

The first is the provision in the fourth section, that the awards of the commissioners to assess the damages for the right of way, should be recorded by the corporation in the circuit clerk's office of St. Clair county. In the same section is also a provision, that notice should be published in some paper in that county, of the intention of the company to apply to the governor to appoint such commissioners. And again, in the same section is a provision, that the possession of the company should not be affected by an appeal from the award of the commissioners, and that the owner of the land should not be allowed to take an appeal or prosecute a writ of error, unless he would stipulate, that the company might retain the possession, upon their giving bond with security, to be approved by the clerk of the circuit court of St. Clair county, conditioned to pay the

damages, &c. It was assumed upon the argument, that these provisions made it necessary that all appeals from the awards of the commissioners should be taken to the circuit court of St. Clair county, or at least, that the legislature so understood it. This, however, by no means necessarily follows. Nothing is said about the jurisdiction of such appeals, or the mode of taking them. All of that is provided for in the law of 1845, and is left unchanged by any thing to be here found. The only object of this provision is to affect the question of possession, in case an appeal is taken. By the law of 1845, if the company take an appeal, they must give bond that they will pay the damages which shall be adjudged against them, and by the charter, if the owner of the land takes an appeal, he shall stipulate that the company may retain the possession, upon their giving a bond with security, to be approved by the clerk of the circuit court of St. Clair county, to pay the damages, &c. If they do not give this bond, the appeal proceeds the same as in other cases, and the only effect is that they lose the possession. The appeal is perfected without this bond which need not necessarily be filed with, and which constitutes no part of the appeal papers. The provision, then, that this bond must be approved by an officer in St. Clair county, in no way interferes with an appeal to be taken to the circuit court of Madison county. The office of the company is located in the city of Belleville, and there may have been a propriety in requiring the bond which entitles the company to the possession of the premises, to be approved by an officer residing in the same place. So too of the publication of the notice of an intention of the company to apply to the governor for the appointment of commissioners. That had no connection with an appeal, nor did it prevent the governor from selecting commissioners from Madison, or any other county. It was a matter of arbitrary discretion with the legislature to determine in what paper the notice should be published, and they might as rightfully have selected a paper in Alton, or St. Louis even, as in St. Clair county. Nor does the fact that the award of the commissioners is required to be recorded in the office of the clerk of the circuit court of St. Clair county determine any thing as to the location of the premises upon which the award is to be made. It is true that such record might operate as constructive notice to third persons of the right of the corporation to occupy the land, but such notice is effectually given, by the actual possession of the company, by the construction of the road. The most substantial purposes of such record is the preservation of the evidence of the title of the company, and it may have been thought con-

venient to have that preserved by a record at the place of the home office of the company.

But these suggestions are made rather with the purpose of showing that there is no actual incongruity between the provisions of the charter above adverted to, and a proceeding to acquire the right of way in counties other than St. Clair, than because I suppose they were framed with any particular reference to the exercise of the right conferred in the seventeenth section, to extend the road beyond the termini specified in the charter. All of the details of the bill were framed with particular reference to the specified road, to secure the construction of which was the primary object of the legislature in the passage of the law, rather than with express reference to the exercise of an undefined power, which is expressly granted, but in the exercise of which the legislature have manifested no particular interest; and this being the case, it is remarkable, indeed, that these details do not in some substantial way interfere with the exercise of a power granted in such unlimited terms, and without a particular reference to which they were undoubtedly prepared. Even were there inconsistencies under such circumstances to the extent supposed, we should hardly be justified in depriving the company of a right which is given in terms so plain and absolute, that there is no room even to doubt of their meaning, when there is no provision of the law which has the appearance of a design to limit or explain them. One portion of a law may undoubtedly qualify, restrain, or even suspend another portion, but in order to have that effect, it must appear that it was framed with that intention. Can any one reasonably suppose that these provisions of the charter, providing for the recording of the award, the publication of the notice, or the approval of the bond, which may be done at any time after the appeal is perfected, were inserted with the view of limiting the power granted in the seventeenth section, so as to prohibit the company from extending the road beyond the limits of St. Clair county, when that section says they may extend to and connect with any other road in this State? It is evident that those provisions were inserted without any reference to or a thought of this right of extension, which is inserted in a subsequent and separate part of the charter. Had such a restriction been intended, it would have been provided for in other and express terms, and not been left to a more than doubtful implication, eminently calculated to deceive and entrap those who were invited to expend their money upon the good faith of the State in a public enterprise.

But we were referred to legislative history, to show that this

power of extension was not designed to confer so broad a right as the language imports. Whatever else may have been granted or refused by this legislature, it was not pretended on the argument, nor am I advised that such is the fact, that they or their predecessors ever refused to sanction the construction of a railroad between Alton and Illinoistown, nor am I aware that a charter specifying such a road was ever asked for. But granting that it had been, and refused, and it would go but very little way to prove that the legislature did not mean what they have expressly declared. Nothing is more common, than to see a measure defeated in one form to-day, and granted in another, to-morrow. Nor can the presumed, or even well-known views of all the members of the legislature, be allowed to repeal an express provision of a law, or to control its construction. The law alone can speak the legislative will. When the courts shall be driven to the lobbies of the legislature to learn the sentiments of the members, for the purpose of construing the laws, a new rule of construction will have been adopted. But above all others, this class of legislation should be construed by its own terms, and without reference to extraneous circumstances, and should be so framed as not to mislead or deceive those to whom it is addressed. Here is a law, not designed for the general government of our own citizens alone, who may be supposed to be familiar with our legislative history and with the general sentiments of their representatives, but it is also a proposition for a contract, addressed to capitalists throughout the world, ignorant as they must be of all these extraneous circumstances, and who must necessarily rely alone upon the terms of the law, to determine the nature and character of the proposition. In such a case, justice to them and justice to the integrity of the State, require that we should look to the terms of the law for its meaning, and inquire how it was fairly understood by those to whom it was addressed, and who have accepted and acted upon it, and thus become parties to it. There is, however, nothing in the history of our legislature, so far as I understand it, to warrant the supposition, that had a sanction to this particular route been asked for, it would have been refused. No one can ever know what particular route it was the design or expectation of the legislature would be taken in the extension authorized in such general terms. Some members may have expected one route would be taken, and some another, while the minds of others were not fixed upon any particular route; and it is very certain that all those who voted for the law had not agreed upon or contemplated any particular route, else that route would have been adopted and specified.

The road, to a certain extent, was agreed upon and specified; beyond that, an indifference is manifested, indicating that it was not supposed to be prejudicial to the public interest to extend it to and unite it with any other road in the State, which the company might select. Whether we agree with the legislature in the propriety of making so broad a grant of powers, it is unnecessary to say. The responsibility is with them and not with us.

But, even admitting that we felt the most perfect moral certainty, that the legislature never did intend to sanction this particular extension, and it by no means follows, that we may refuse to give effect to a power thus unintentionally granted. Numerous statutes might be referred to, the effect of which is entirely different from any thing which could have been designed, and yet the courts must give them full effect. A reference to one will suffice. In 1847, our legislature passed a law increasing the punishment for manslaughter, and repealing the old law without any saving clause. The effect was to turn loose all those who were guilty of that crime, and who were not yet convicted; and under its provisions several escaped. I was obliged to arrest one judgment after conviction and set the criminal free, and yet I never supposed, and no one ever supposed, that the legislature ever contemplated such a result. The design of the new law was to increase and not to remit the punishment for that crime, and the remission was the result of an oversight. If it be said that there was no legislative intention on the subject, because the particular effect was not thought of, the same reply is conclusive in the case before us. Either the legislature did not think of the road being extended to Alton, or else it was designed to grant the power to extend it there. Had there been an affirmative intention not to allow it, there is no room for doubt that it would have been expressly prohibited or excepted, when the general power was granted. Is not the terminus of the Chicago and Mississippi road at Alton, in this State ? As a geographical fact it is so, and if so, then the law says they may go there and unite with that road. Is not a railroad as much a geographical designation as a city, and suppose the charter had said they might extend to and unite their road with any city in this State, might they not have gone to Alton ? And yet the legislature as well knew that there was a railroad at Alton as they knew that there was a city there. Tell me why the power to go there now is not as ample as it would have been then. It requires no more liberal construction in the one case than in the other. Indeed it is no construction at all, for there is no room for construction. It

is simply repealing what the legislature has said. They have granted the power, and it is our duty to protect it.

Something was said upon the argument about connections with other roads, and that at most this seventeenth section allows of but one extension for the purpose of connecting with another road. There is certainly nothing in this case showing that any other connection than the one mentioned in the plea is contemplated. If the facts are, that the company had previously adopted another extension, for the purpose of connecting with a different road, a replication should have shown it, when an entirely different question would have been presented. We may know outside of the record, that in order to reach Alton this road must cross the Ohio and Mississippi road; but the mere crossing of another road does not necessarily form a connection with it, such as is contemplated in this section. That means such an arrangement as to pass cars, freight, and passengers conveniently from one road to the other. But there is nothing in this record tending to show that this right to extend to and unite with another road, has been exercised and exhausted.

The constitutional objection to the law, remains to be considered. This we are of opinion is not well taken. The constitution provides, "And no private or local law which may be passed by the general assembly shall embrace more than one subject, and that shall be expressed in the title." That this is a private law, within the meaning of this provision of the constitution, we have no doubt. It was to prevent abuses in this class of legislation that this provision of the constitution was adopted, and the legislature could not evade its effect by simply declaring the act to be a public law, as was done in this case. The first inquiry then is, Does this law embrace more than one subject? The subject of this law is the incorporation of a railroad company. No other subject is introduced into the law, and but one company was created by it. But it was urged that two roads were authorized to be constructed by the law, if this extension is sustained. Even admitting that this would make the law obnoxious to the constitutional objection, the fact does not sustain the objection. With the extension to Alton, there will be but one continuous road, and that on a much straighter line than many other roads in the State. If we are to look at the line of road authorized to be constructed, for the purpose of determining whether the bill embraces more than one subject, we shall find this law as free from objection as most others of a similar character, and much more so than some others. Take for instance the law creating the Illinois

Central Railroad Company, providing for the construction of a main trunk, and the Chicago and Dubuque branches, the former of which projects from the main road, over two hundred miles from its terminus at Chicago, presenting the same objection in a much higher degree. And there is another feature in that charter which is not found in the one before us. That grants not only the necessary powers for the construction of the road, but it also contains a grant to the company of over two and a half millions of acres of land. There would be much more propriety in saying that here are two distinct subjects contained in the law, and yet a little reflection will convince us that even that law contains but one subject, and that is the incorporation of a company for the construction of a railroad, to promote which object alone all of the various provisions are introduced. Much less plausible objections, however, are urged against the charter now before us. Should we hold this law to be unconstitutional for the reason urged, but few railroad charters in this State could survive the test.

The title of the bill is: "An act to incorporate the Belleville and Illinoistown Railroad Company." This is not only a literal, but it is also a substantial compliance with the constitution. The subject and the object of the law was to incorporate a railroad company, the name of which is distinctly given in the title of the bill. But the name of the company does not give a full description of the road authorized to be constructed. There is no constitutional provision requiring that this should be done. Should we require that, it would be equally necessary to require the title to state all of the other powers granted by, or provisions contained in the charter, for they are as much a part of the object of the law, and thus the title would have to be nearly as long as the law itself, else some one might complain that he was misled by it. There is probably not a charter of any kind in the statute books which is not liable to this objection. The "Illinois Central" gives no accurate idea of the location and extent of that road and its branches, and the "Chicago and Mississippi" would apply equally to any of the six or seven roads extending from Chicago to the Mississippi river, and the "Ohio and Mississippi" tends actually to mislead as to the location of that road, for it nowhere touches the State of Ohio or the river having that name.

This provision of the constitution must receive a fair and reasonable construction; one which will repress the evil designed to be guarded against, but which, at the same time, will not render it oppressive or impracticable. The names of corpora-

3 *

tions have ever been arbitrary or fanciful, and they probably ever will be. They most generally, it is true, give some idea of the purposes of the corporation, but necessarily in the most general way. We are of opinion that this law embraces but one subject, which is expressed in its title, and that it must be sustained.

The circuit court erred in sustaining the demurrer to the plea, and its judgment must be reversed, and the cause remanded.

.    *Judgment reversed.*

TREAT, C. J., dissented.