# PRESIDENT AND TRUSTEES OF LOCKPORT

## *v.*

# GEORGE GAYLORD.

1. TOWN CHARTER—*borrowing money.* Where the charter of a town prohibited the trustees from borrowing money, unless authorized by a vote of its citizens, and they directed the street commissioner to open a street, and in doing so he borrowed from the plaintiff, at different times, various sums of money, amounting to several hundred dollars, the trustees afterwards issued orders on the treasury for the amount, and suit being brought to recover the amount due on them: *Held,* that the orders were issued in violation of law, and were void, as the transaction was, in substance, borrowing money without being authorized by a vote of the citizens of the town.

2. CURATIVE LAW—*constitutional power.* In such a case, after the orders were issued, the general assembly passed a law amending the town charter,

and by a section therein declared the orders should be valid and binding, but the title of the act had no reference to the validating of these orders: *Held*, this was a special or local law, and that there were two subjects in the law, and the constitutional requirement was not observed in expressing this matter in the title, and the provision to make the orders valid was therefore void, and they were not affected by the enactment.

APPEAL from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Messrs. VANARMAN & VALLETTE, for the appellant.

Messrs. FELLOWS & LEONARD, and Mr. L. S. PARKER, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The board of trustees of the village of Lockport ordered the street commissioner to repair, or rather open, Seventh street. He proceeded to do so, and in the execution of the work, borrowed from the plaintiff, at different times, sums of money, amounting in all to several hundred dollars. The commissioner made his report, showing his receipts and expenditures in detail, and the trustees ordered their clerk to issue to the plaintiff orders on the treasury for the amounts borrowed of him. This was done, and this suit was brought to recover the amount of these orders. The plaintiff recovered judgment in the court below, and the defendant appealed.

The charter of the village has the following clause:

"The said trustees shall have no power to borrow money, or issue any evidences of indebtedness, at any time, for an amount above what is already provided for by taxes levied, or other certain sources of revenue, unless specially authorized so to do by a vote of the majority of the legal voters of the corporation."

It is contended that, in this transaction, the trustees borrowed money; that the orders issued on the treasury are evidences of indebtedness, and that as the conditions under the foregoing provision of the charter, on which these things

might be done, did not exist, there can be no recovery in this suit.

We incline to regard this position as well taken. By the provision in question, the legislature seem to have undertaken to protect the citizens of this village against the disastrous consequences which have elsewhere resulted, from the reckless and improvident financial management of municipal officers. It is much easier to make public improvements on credit than with ready money; to throw the expense of them upon others who are to come after, than to pay for them at the time. The credit system tempts to the making of lavish and unnecessary expenditures. The contrary one leads to the making of such only as are needful and judicious, and tends to insure economy in the making of them.

Instances are not wanting in the experience of the State, where municipalities have gone on making improvements under a vicious credit system, causing depreciation of their credit and their evidences of indebtedness to be hawked about at large discounts, whereby they were compelled to pay greatly enhanced prices for whatever they got done, resulting in the accumulation of burdens of debt weighing them down in bankruptcy.

The general assembly thought proper, for the protection of the citizens of this village, to secure for them the "pay as you go" policy, and prevent the making of expenditures in advance and in anticipation of the means of payment, by denying to their officials the power of borrowing money or issuing any evidences of indebtedness at any time for an amount above what was already provided for by taxes levied, or other certain sources of revenue, unless specially authorized so to do by a vote of the majority of the legal voters of the corporation. These conditions which authorized the borrowing of money or issuing of evidences of indebtedness did not exist in this case.

We regard the transaction in question as essentially a borrowing of money by the trustees, and that to sanction it would

be to allow a plain evasion of the charter. We deem it our duty to give effect to this provision of the charter and secure to the citizens of this village the protection intended, and not fritter away the provision by construction.

We hold, then, that the transaction with the appellee was unauthorized and void, as within the direct prohibition of the charter.

But it is insisted that the act of the trustees was legalized by subsequent legislation.

In 1869, the legislature passed an act entitled, "An act to amend the charter of the village of Lockport, passed February 12th, A. D. 1853," the 6th section of which is as follows:

"That the appropriations made by the president and trustees, and orders drawn by the clerk in February, A. D. 1867, be and the same are hereby fully legalized in all respects."

The orders sued on bear date February 19th, 1867, and so appear to come within the purview of the act.

To this it is answered, that the act of 1869 is in violation of the following clause of section 23 of article 3 of the constitution: "And no private or local law which may be passed by the general assembly shall embrace more than one subject, and that shall be expressed in the title;" that the subject of the sixth section is not expressed in the title of the act. The title is appropriate to all the provisions of the first five sections of the act, as they are in reference to and amendatory of the said original act mentioned in the title.

We do not perceive how the 6th section can be regarded as germane to the subject expressed in the title. The legalization of unauthorized acts of the corporation can not be considered to be amendatory of its charter. The 6th section does not profess to amend the original act of incorporation, or define the powers to be exercised by the corporation in future; its only possible effect is to benefit individuals who may happen to be the holders of the certificates mentioned. The object of this 6th section is not expressed in the title of the act, and we

must hold that it was passed in violation of the constitution, and is therefore void.

For the reasons indicated, in the view of a majority of the court, the judgment must be reversed and the cause remanded.

*Judgment reversed.*