# Town of Middleport

*v.*

# · Ætna Life Insurance Company *et al.*

1. Municipal bonds—*void if issued without authority.* Whoever deals in municipal bonds must be presumed to know what powers the corporation have, under the enabling laws of the State, to issue the securities in which they are making investments. Such authority, if any exists, is to be found in public laws equally accessible to all, and if bonds are issued without any authority in the officer issuing them, they are void, even in the hands of purchasers who have paid full value for them.

2. Where a law authorizes the donation of money by a municipal corporation, to aid in the construction of a railroad, and provides for levying a tax to raise the amount to be donated, the officers of the corporation can not adopt any other mode of paying the same, and bonds issued by them for the purpose of paying such indebtedness are void.

3. Municipal indebtedness—*by whom to be created.* Under an act of the legislature authorizing the "authorities of any township" to levy and collect a tax with which to meet and liquidate aids voted to a railroad, or to borrow money and issue bonds therefor, for the purpose of paying the amount so voted, the supervisor and clerk of a township have no power to borrow money and issue bonds therefor; that can only be done by a vote of the people of the township whose property is to be affected by the burden imposed.

4. Municipal subscriptions—*voted prior to constitution of* 1870. Donations and subscriptions in aid of railroads, voted by municipal corporations under then existing laws prior to the adoption of the constitution of 1870, are within the saving clause of that article which inhibits all municipal subscriptions or donations to railroad or other private corporations, and may still be paid.

5. But the obligations assumed by municipal corporations under then existing laws, prior to the adoption of the constitution of 1870, can not, since its adoption, be enlarged or materially changed, either by the action of the people of the municipality or its corporate authorities.

6. Private laws—*title must express object, under constitution of* 1848. All provisions of a local or private law, passed whilst the constitution of 1848 was in force, which are not germane to the subject expressed in the title of the act, are void.

7. Construction of statute—*that holds the law constitutional will be adopted.* A construction of a statute which imputes to the General Assembly a purpose to pass a law directly in opposition to the constitution, will

not be adopted by the courts where a different and more reasonable construction will hold the law valid.

8. BURDEN OF PROOF—*as to validity of municipal bonds.* The burden rests upon the party alleging the validity of municipal bonds, issued since the adoption of the constitution of 1870, to show affirmatively they were authorized by a vote of the municipality under then existing laws, had prior to the adoption of the constitution.

APPEAL from the Circuit Court of Iroquois county; the Hon. NATHANIEL J. PILLSBURY, Judge, presiding.

Messrs. DOYLE & KING, for the appellant.

Messrs. WILSON & PERRY, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The act of March 7, 1867, authorized all incorporated towns and cities, and towns acting under township organization, within limited boundaries, to appropriate such sums of money as they might deem proper to the Chicago, Danville and Vincennes Railroad Company, to aid in the construction of its road, to be paid as soon as the track should be located and constructed through such city, town or township, subject, however, to the condition that the proposition to make such appropriation should first be submitted to a vote of the legal voters of such municipality, at a regular or special election, upon notice being given; and if the majority of the votes cast should be in favor of the appropriation, then it should be made, otherwise not. Provision was made that the authorities of such corporations might levy and collect a tax, as might be necessary and proper for the prompt payment of such appropriations. No authority was given by that act to issue bonds or borrow money with which to pay such donations.

An election was held on the 8th day of June, 1867, in the town of Middleport, under the provisions of that act, at which a majority of the votes cast were in favor of the proposition submitted, that the town would appropriate, as a donation to the Chicago, Danville and Vincennes Railroad Company, the sum of $15,000. No work was done by the railroad company

towards constructing its road until the spring of 1871. It was then prosecuted with such dispatch, the road was completed through the town of Middleport by about the middle of July, next thereafter.

On the 10th of February, 1871, at a meeting of a portion of the officers of the town, at which were present the supervisor, the clerk and one justice of the peace, a preamble and resolution were adopted, to the effect that as it appeared the township was unable to pay the amount voted as a donation to the railroad company, it was resolved to issue bonds in the sum of $15,000, together with a sufficient amount to cover the discount necessary to enable them to negotiate the bonds, that is to say $1500, in addition to the principal sum donated. Bonds were accordingly prepared for the sums indicated, bearing date the 13th day of February, 1871, signed by the supervisor and town clerk, and delivered to a trustee resident in New York, in escrow, to be delivered to the railroad company when certain conditions should be performed, to prevent, as is alleged, the enjoining the issuing of such bonds.

These bonds were afterwards, at the request of the company, surrendered up and destroyed, and other bonds issued in lieu thereof, bearing date March 24, 1871, each for the sum of $1000, numbered from one to fifteen, both numbers inclusive, signed by the supervisor and town clerk, payable at different periods, with interest at ten per cent per annum, payable semi-annually, as shown by coupons attached. At the same time the supervisor paid the agent of the company $1500 in money, instead of issuing an extra bond, as was proposed by what purports to have been an order of the board of auditors of the town.

All these bonds recite upon their face the several acts of the legislature under which they were issued, and that they were issued in accordance with a vote of the electors of the township, at an election on the 8th day of June, 1867. The present holders of the bonds are chargeable, therefore, with notice of the fact whether there was any authority of law for issuing such bonds. Under the decisions of this court, if there was a

total want of authority in the municipal officers to issue such
bonds, they are void, no matter if they have come to the hands
of the present holders for full value paid.    Whoever deals in
municipal bonds must be presumed to know what powers such
corporations have, under the enabling laws of the State, to
issue the securities in which they are making investments.
Such authority, where any exists, is to be found in public laws,
and is equally accessible to all.

This brings us to the important inquiry, what authority had
the officers assuming to act on behalf of the town of Middle-
port, to issue the bonds which are the subject of this litigation?
Clearly they derived no authority whatever from the act of
March, 1867, under which the election as to the propriety of
making the appropriation to the railroad company was held.
That act did not purport to give either the township or its offi-
cers power to borrow money or to issue bonds in payment of
any appropriations that might be voted by the legal voters of
the town to the railroad company.    Such appropriations or
donations were to be paid by a tax, which it was made the
duty of the corporate authorities to levy and collect.    Where
one mode of payment of municipal indebtedness is fixed by
statute, by implication it excludes all others.    The electors gave
their consent to the statutory mode of paying the appropriation
voted, viz: by taxation, and none other, and the corporate au-
thorities of the town were not at liberty to adopt any other
mode.

The act of February 26, 1869, to which reference is made
as conferring power upon the officers of the town to issue
bonds in payment of the appropriation or donation voted under
the act of March, 1867, is "An act to legalize certain aids
heretofore voted and granted to aid in the construction " of
the proposed railroad.    That is all it purports to be by its
title.    The constitution of 1848, under which these acts were
passed, contained a restriction that "no private or local law
which may be passed by the General Assembly shall embrace
more than one subject, and that shall be expressed in the title."
This is a private or local law, and it can hardly be maintained

the issuing of bonds in liquidation of appropriations voted under a prior act, is germane to the subject expressed in the title of the bill, viz: "to legalize certain aids heretofore voted and granted." No such object is expressed in the title, and hence it follows, all provisions of the bill not so expressed are void. *Lockport* v. *Gaylord*, 61 Ill. 276.

Reference is also made to the act of March 24, 1869, as conferring additional powers upon the town officers to issue the bonds in question. That is "An act to enable towns, townships, cities or counties" along the line of the proposed railroad, to contribute towards its construction. It will be observed the provisions of every section of this act, except the eighth, are all prospective in their operation. If this is not the true construction, then the great portion of the act is plainly unconstitutional, as being inhibited by that clause of the constitution of 1848 which forbids the passage of any private or local law embracing more than the one subject expressed in the title. Should the fourth section be construed to confer upon the officers of townships that had previously voted aids to this railroad company, power to borrow money and issue interest-bearing bonds, running for definite periods, with which to pay such donations, then it does not appear any such purpose is expressed in the title of the act, and it would be void, as being within the inhibition of the constitution. But construing the 4th section as we think it ought to be, simply as conferring power upon the corporate authorities of the town to borrow money and issue bonds to pay such donations as should thereafter be voted under that act to aid in the construction of the railroad, then its provisions would be germane to the subject expressed in the title of the bill, and it would be a valid law. Any broader construction would impute to the General Assembly a purpose to pass a law directly in opposition to the constitution. That we ought not to do, when a different and more reasonable construction will hold it a valid law.

But, waiving all constitutional objections to both subsequent statutes, and treating their provisions as valid enactments, having a retroactive operation, designed to aid in completing

donations previously voted under then existing laws, still, we do not think they, or either of them, when rightly understood, conferred any authority whatever upon the township officers to issue the bonds in litigation. The power conferred by the act of March 24, 1869, is to enable the proper town authorities to levy and collect a certain per cent, by taxation, with which to meet and liquidate aids voted, or borrow money and issue bonds therefor, for the purpose of paying such donations. What is meant by the "authorities of any township," is not entirely clear, but we understand it is that body of officers in a township that represent the township as to its financial and other matters, as a common council represents a city, or as a board of trustees represents an incorporated town. The supervisor and town clerk of a township constitute no such board, and no warrant can be found anywhere in this act, or elsewhere, that would justify them in borrowing money, for any purpose, and issuing bonds therefor. That, we understand, can only be done by a vote of the people of the township whose property would be affected by the burden imposed. Constructing railroads, or aiding such construction by donations, are not among the general powers of municipal corporations, and it has never been understood the General Assembly had any power to impose such burdens, or authorize others to do so, upon the citizens of any municipality, without their consent. Our opinion is, if these acts referred to were intended by the framers to have any such effect, or to impose any such burdens, without the consent of the citizens whose property would be affected, then they are in violation of the constitution. *Marshall v. Silliman*, 61 Ill. 218.

The electors of the township, under the act of March 7, 1867, had voted a sum of money as an appropriation or donation to the railroad company, to be paid by taxation, and in no other way. They never gave their consent to any other mode of payment, and if the object of the later statute was to compel the township to issue interest-bearing bonds in liquidation of such aids, it was beyond legislative powers. Payment of interest for a series of years, upon donations voted, or discount

to make the donation equal to ready money in the market, was a burden the people of the township had never assumed, and no power existed anywhere to impose it upon them without their consent.

Since the adoption of our present constitution, it is plain any donation attempted to be made by any municipality in aid of a railroad or private corporation is forbidden absolutely. All that is contended is, that donations, as well as subscriptions voted under existing laws, prior to the adoption of the constitution, are within the saving clause of that article of the constitution which inhibits all municipal subscriptions or donations to railroad or other private corporations, and may still be paid. This is the extent of the decision in *The Chicago and Iowa Railroad Co.* v. *Pinckney et al.* 74 Ill. 277, so confidently cited as controlling this case. The case at bar, in our opinion, does not fall within the letter or spirit of that decision, and we see no reason for extending the principle declared, so as to make it embrace other cases not analogous.

It is apprehended the obligations assumed under existing laws can not, since the adoption of the constitution, be enlarged or materially changed, either by the action of the people of the township or its corporate authorities. All power is taken away, and the utmost that can be done is to make and complete the subscription or donation previously voted under then existing laws, upon the same terms and conditions as voted. Subscriptions or donations upon other terms would obviously require new consent on the part of the people of the municipality, which can not be had for want of power. No donation of interest-bearing bonds, running through a series of years as these bonds do, was ever voted by the people of the township under existing laws, prior to the adoption of the constitution, and hence they are absolutely void, even in the hands of a holder who may have paid value for them. The burden rests upon the party alleging the validity of bonds issued since the adoption of the constitution, to show affirmatively they were authorized by a vote of the municipality under existing laws, prior to the adoption of the constitution. *Jackson Co.* v.

*Brush et al.* 77 Ill. 59. That has not been done, and the admitted facts show it can not be proven.

What action the board of auditors may have taken since the adoption of the present constitution, in the matter of issuing these bonds, is of no consequence, as they had no authority to act in the premises. As we have seen, no such aid as interest-bearing bonds was ever voted to the railroad company. That which was voted was a definite sum of money, payable by taxation, without interest, and was of much less value. Issuing bonds bearing interest through a series of years was an additional burden, which neither the people nor the corporate authorities of the town could impose. The constitution, as we have seen, forbids the exercise of such powers.

The case of *The Chicago, Danville and Vincennes Railroad Co.* v. *Smith*, 62 Ill. 268, involved a donation to the railroad company under this same law, and is cited as controlling this decision. The point most elaborated in the opinion, is the constitutionality of laws permitting municipal subscriptions and donations to railroad corporations. Such laws were declared to be valid. The questions made in this case do not seem to have been made in that case—at least no discussion was had upon them in the opinion of the court. So far as anything is decided in that case, we are at liberty to decide the case before us as on first impression.

Our conclusion is, the bonds in question having been issued by the supervisor and town clerk on behalf of the township, without authority of law, are void, in whosesoever hands they may be.

The decree will be reversed, and the cause remanded for further proceedings.

*Decree reversed.*