## MAHOMET *v.* QUACKENBUSH.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ILLINOIS.

Submitted March 8, 1886.—Decided April 5, 1886.

The requirement of the Constitution of Illinois that "no private or local law which may be passed by the general assembly shall embrace more than one subject, and that shall be expressed in the title," is satisfied if the law has but one general object, and that object is expressed in the title and the body of the act is germane to the title.

A statute of Illinois which was entitled "An Act to amend the articles of association of the Danville et cet. Railroad Company, and to extend the powers of and confer a charter upon the same," and which, in the body of the act, authorized incorporated townships along the route to subscribe to its capital stock on an assenting vote of a majority of the legal voters, and further legalized assents of voters of certain townships given at meetings held previous to the passage of the act, complied with the requirement of the Constitution of that State that "no private or local law which may be passed by the general assembly shall embrace more than one subject, and that shall be expressed in the title."

*Anderson* v. *Santa Anna*, 116 U. S. 356, affirmed.
*Schuyler County* v. *Rock Island & Alton Railroad Co.*, 25 Ill. 182 ; and
*O'Leary* v. *Cook County*, 28 Ill. 543, approved and applied.
*Welch* v. *Post*, 99 Ill. 474, questioned.

The case is stated in the opinion of the court.

*Mr. John McNulta* and *Mr. R. A. Lemon* for plaintiff in error.

*Mr. T. C. Mather* for defendant in error.

Mr. Chief Justice Waite delivered the opinion of the court.

The facts of this case are identical with those of *Anderson* v. *Santa Anna*, 116 U. S. 356, except that here the bonds were issued by one township on the line of the Danville, Urbana, Bloomington and Pekin Railroad, and there by another. The bonds in the two cases are the same in form and the statutory authority for their issue the same. All questions actually decided in the other case are concluded in this, but one point is made now that was not presented then, and it arises on these facts :

Art. 3, § 23 of the Illinois Constitution of 1848, which was in force when the statutes on which the case depends were passed, contained this provision :

" And no private or local law which may be passed by the general assembly shall embrace more than one subject, and that shall be expressed in the title."

The act of 1867, under which the bonds were issued, was a private or local law with the following title :

" An Act to amend the articles of association of the Danville, Urbana, Bloomington and Pekin Railroad Company, and to extend the powers of and confer a charter upon the same."

The parts of the act pertinent to the present enquiry are §§ 1, 12, and 13. These are as follows :

" § 1. *Be it enacted by the people of the State of Illinois represented in the General Assembly*, That the said corporation is hereby created a body politic and corporate under the name and style of ' The Danville, Urbana, Bloomington and Pekin

Railroad Company,' &c. And the said company is authorized and empowered to locate, construct and complete a railroad, extending from the city of Pekin, in Tazewell County, Illinois, through or as near as practicable to the towns of Tremont, Mackinawtown, Concord, Bloomington, Leroy, Mount Pleasant, Mahomet, Champaign City, Urbana and St. Joseph to the east boundary of the State of Illinois," &c.

"§ 12. To further aid in the construction of said road by said company, any incorporated town or township in counties acting under the township organization law, along the route of said road, may subscribe to the capital stock of said company in any sum not exceeding two hundred and fifty thousand dollars.

"§ 13. No such subscription shall be made until the question has been submitted to the legal voters of such incorporation, town, or township in which the subscription is proposed to be made; and the clerk of each of said towns or townships is hereby required, upon the presentation of a petition signed by at least ten citizens, who are legal voters and tax-payers of such town or township for which he is clerk, and in which petition the amount proposed to be subscribed shall be stated, to post up notices in at least three public places in each town or township, which notice shall be posted not less than thirty days before the day of holding such election, notifying the legal voters of such town or township to meet at the usual place of holding elections in such town or township, or some other convenient place named in such notice, for the purpose of voting for or against such subscription: *Provided*, that where elections may have already been held, and a majority of the legal voters of any township or incorporated town were in favor of a subscription to said railroad, then, and in that case, no other election need be had, and the amount so voted for shall be subscribed as in this act provided. And such elections are hereby declared to be legal and valid, as though this act had been in force at the time thereof, and all the provisions hereof had been complied with."

The point now made is that the statute, so far as it undertakes to authorize municipalities to subscribe to the capital stock

of the corporation, is unconstitutional, because it embraces two distinct subjects, one the incorporation of the railroad company, and the other an enlargement of the corporate powers of municipal corporations, the first of which alone is expressed in the title. This objection, it seems to us, is fully disposed of by the case of the *Supervisors of Schuyler County* v. *Rock Island & Alton Railroad Company*, 25 Ill. 181, 183, decided by the Supreme Court of Illinois in 1860. There the title was "An Act to incorporate the Rock Island & Alton Railroad Company," and the act, besides incorporating the company, authorized counties to subscribe to the stock. As to this the court said, speaking through Chief Justice Caton: "We think the title of this act sufficient to embrace the whole of the law, and that it is a compliance with the constitutional requirement. All the provisions of the act are appropriately designed to carry out the object of the corporation. If it was proper to authorize subscriptions to the stock, it was certainly proper to enable individuals or counties to subscribe and specify the terms and conditions on which they might subscribe, and the mode of making the subscription."

In States where constitutional provisions like that now under consideration have been decided to be mandatory, and not directory only, it has generally been held that the requirement is satisfied if the law has but one general object, and that is clearly expressed in the title. It is enough if the body of the act is germane to the title. This is certainly the well established rule in Illinois, where, as was said by Mr. Justice Breese, dissenting in *O'Leary* v. *County of Cook*, 28 Ill. 534, decided in 1862, the "court has leaned rather in favor of the validity of private acts, when the subjects of the acts are multifarious." In that case a provision in a law entitled "An Act to amend an act entitled 'An Act to incorporate the North Western University,'" which prohibited "the sale of spirituous liquors within four miles of the university, under a special penalty to be recovered by the County of Cook," was held by a majority of the court not to be repugnant to this provision of the Constitution, and it was said, "The object of the charter was to create an institution for the education of young men, and it was

competent for the legislature to embrace within it everything which was designed to facilitate that object.' Every provision which was intended to promote the well being of the institution, or its students, was within the proper subject matter of that law." p. 538. As early as 1853 it was decided in *Belleville, &c., Railroad Company* v. *Gregory*, 15 Ill. 20, 29, that in ". An Act to incorporate the Belleville .and Illinoistown Railroad Company," authority could be given the company "to extend and unite with any other railroad in this State." So, too, in *Firemen's Benevolent Association* v. *Lounsbury*, 21 Ill. 511, it was held, in 1859, that, in a law entitled "An Act to incorporate the Firemen's Benevolent Association and for. other purposes," it was competent to provide ·that the agents of all foreign insurance companies doing business in Chicago should pay the association two dollars on every hundred dollars of premiums received by them during a year, the court simply remarking on this branch of the case, "We think the sixth section germane to the objects of the bill and embraced properly in the same subject, the whole of which is sufficiently expressed in the title." p. 515. The same general principle has been fully recognized and enforced in *Neifing* v. *Town of Pontiac*, 56 Ill. 172; *The People* v. *Wright*, 70 Ill. 388, 396; *The People* v. *Brislin*, 80 Ill. 423, where it was said, p. 433, " this court has gone very far to uphold statutes supposed to be within this objection; " " the body of the act in question is germane to the title of the bill; " *Guild, Jr.*, v. *City of Chicago*, 82 Ill. 472; and *Fuller* v. *The People*, 92 Ill. 182, 185. This court also decided to the same effect in *Jonesboro City* v. *Cairo & St. Louis Railroad Co.*, 110 U. S. 192, 199, as to a similar provision in the Illinois Constitution of 1870.

It is further insisted, however, that if this law is good, so far as the general authority to subscribe is concerned, it is bad to the extent that it seeks to give effect to the elections which were unauthorized at the time they were held, and we are referred to the cases of *Village of Lockport* v. *Gaylord*, 61 Ill. 276, and *Middleport* v. *Ætna Life Ins. Co.*, 82 Ill. 562, in support of this position. In *Lockport* v. *Gaylord* it was decided that a provision legalizing certain appropriations theretofore made

by the president and trustees of the village and certain orders
drawn by the clerk was not germane to the title of ."An Act to
.amend the charter of the village of Lockport, passed February
'12, 1853," and in *Middleport* v. *Ætna Ins. Co.*, that authority
to issue bonds in liquidation of appropriations voted under a
prior act was not germane to the title of "An Act to legal-
ize certain aids heretofore voted and granted to aid in the con-
struction" of a proposed railroad. The first of these cases was
decided in 1871, and the last in 1876. In the present case,
however, the provision relates only to the terms and conditions
on which subscription to the stock of the railroad company
might be made, which it was said in *Supervisors of Schuyler
County* v. *Rock Island and Alton Railroad Co.* was germane
to the general subject of a bill to incorporate a railroad com-
pany. It is nothing more nor less than a requirement of a
vote of the people as authority for the subscription, with a pro-
viso that if the vote had already been taken it need not be taken
over again. This, as it seems to us, comes within both the let-
ter and spirit of the earlier adjudications, and that these have
not been overthrown by the later cases. We are aware that in
*Welch* v. *Post*, 99 Ill. 471, 474, decided in 1881, the court said
that "on the authority of *Middleport* v. *Ætna Insurance Co.*"
it was "inclined to hold" that power could not be given
to municipal corporations to subscribe to the stock of a rail-
road company in an act entitled substantially like that now
under consideration, but as neither in this case, nor in that of
*Middleport* v. *Insurance Co.*, nor in that of *Lockport* v. *Gaylord*,
was any reference whatever made to the earlier decisions, which
seem to be so decidedly the other way, we do not feel ourselves
called upon to depart from the long-settled practice in the State,
by what has yet been done towards making a change. In fact,
in *Fuller* v. *The People*, before cited, which was decided eight
years after the *Lockport Case*, and three years after that of
*Middleport* v. *Ins. Co.*, the following quotation is made with
approval from Cooley on Constitutional Limitations (1st ed.),
144, § 2: "The general purpose of these provisions is accom-
plished when a law has but one general object, which is fairly
indicated by its title. To require every end and means neces-

sary or convenient for the accomplishment of this general object to be provided for by a separate act relating to that alone would not only be unreasonable, but would actually render legislation . impossible." And again, from *Sun Mut. Ins. Co.* v. *The Mayor*, 8 N. Y. (4 Seld.) 240, ·253 : " There must be but one subject, but the mode in which the subject is treated, or the reasons which influence the legislature, could not and need not be stated in the title, according to the letter and spirit of the constitution."

In *Montclair* v. *Ramsdell*, 107 U. S. 147, *Otoe County* v. *Baldwin*, 111 U. S. 1, 16, and *Ackley School District* v. *Hall*, 113 U. S. 135, we had occasion to consider the same general question, with the same result, in connection with similar provisions in the constitutions of New Jersey, Nebraska and Iowa respectively.

Finding nothing in this case to distinguish it from *Anderson* v. *Santa Anna,* the judgment is, on that authority,

*Affirmed.*