## BALTIMORE & O. R. Co. *v.* COUNTY OF JEFFERSON.

*(Circuit Court, D. West Virginia.* 1886.)

1. CONSTITUTIONAL LAW—STATUTES—ONE OBJECT—CONST. W. VA. 1863, ART. 4, § 36.

   An act which confers power upon an existing railroad corporation to extend its road through a certain county in the state, and also authorizes that county to subscribe to the capital stock of said railroad. is not repugnant to the article in the state constitution providing that no law shall embrace more than one object, which shall be expressed in the title.

2. TAXATION—CONSTITUTIONAL RULES—AID TO RAILROAD.

   An act to submit the question of subscription to the stock of a railroad company to all the male tax-payers of the county is not contrary to any inhibition of the constitution, nor is the power thus improperly delegated to a class of the people instead of the whole people, the class named being those who would be affected by the act.

3. SAME—ONE RAILROAD TAXED TO AID ANOTHER—REPEAL OF EXEMPTION LAW.

   A railroad company is liable to be taxed to furnish the aid voted for another company, although, when the statute authorizing such aid was passed, railroad property was, by a law then existing, exempt from taxation for such purpose; such law being afterwards repealed, and not having been enacted when the company sought to be taxed first obtained a license to do business in the state.

In Chancery.   Bill to enjoin the collection of a tax levied to aid the construction of a railroad.   Demurrer to bill.

*Caleb Boggess* and *J. A. Hutchinson,* for Baltimore & O. R. Co.

*C. C. Watts* and *Forrest Brown,* for the County of Jefferson.

JACKSON, J.   The Baltimore & Ohio Railroad Company, a corporation of the state of Maryland, files its bill against the county of Jefferson, as a corporation of the state of West Virginia, and Eugene Baker, late sheriff, and A. G. Hurst, acting sheriff, of the county, and citizens of this state, to enjoin and restrain the defendant from collecting taxes, which, as the bill alleges, were levied for the purpose of aiding the construction of the Shenandoah Valley Railroad, passing through the county of Jefferson, a rival corporation to that of the plaintiff.   To this bill the defendant demurs, and the case is now heard upon the issue presented by the demurrer.   It appears from the bill that the legislature of West Virginia, on the twenty-fifth of February, 1870, passed "An act to authorize the Shenandoah Valley Railroad Company to construct their road through the state of West Virginia, to the Potomac river, and also to authorize the board of supervisors of Jefferson county to submit to a vote of the people, at a special election, the question of the subscription to the capital stock of the company."   The power of the court is invoked to protect the plaintiff from what it alleges to be "the unjust and illegal claim of the county of Jefferson to charge it with the payment of taxes to discharge the principal and interest of bonds, amounting to $250,000,

issued by said county to pay for its subscription to the capital stock of the defendant corporation."

An examination of the act justifies the conclusion that it was the intention of the legislature to confer power upon an existing corporation, created by the laws of a sister state, to extend her road through the county of Jefferson, in this state. It was not the creation of an original corporation, but was a grant, in the nature of a license, to an existing one, to construct its road, which appears to be the main purpose of the act.

The first question presented for the consideration of the court is the validity of the act under which the subscription was made. It is claimed that this act embraces more than one object, and more than one object is expressed in the title, and is for that reason void, because it is in conflict with the thirty-sixth section of the fourth article of the constitution of West Virginia, adopted in 1863, which provides "that no law shall embrace more than one object, which shall be expressed in the title." In this connection we are informed that the fifth and sixth sections of the act provide for a subscription to the capital stock of the road by Jefferson county, which is an object different from the main purpose of the law, and is for this reason obnoxious to the constitution. To support this position the court is referred to Cooley on Constitutional Limitations, 78, 79, 150, 151, and *Cutlip* v. *Sheriff*, 3 W. Va. 589.

We cannot concur with counsel that either of the authorities cited sustains their view of the law. Mr. Cooley, in discussing this question, under the head of "The Title to a Statute," remarks that the general purpose of constitutional provisions of this character are accomplished when a law has but one general object, which is fairly indicated by the title. This view of the text writer is well supported by judicial decisions. The case in 3 W. Va. so strongly relied on to support the position that the act of 1870 is unconstitutional, we think, does not sustain it. The title of the act in that case was "An act locating the county-seat of Calhoun." But the law, as passed, contained a section which authorized the board of supervisors of said county to sell any property at Arnoldsburg, in the county. The court held this act void, for the reason that the third section contained an object other than the one expressed in the title. It authorized the board of supervisors to sell any county property at Arnoldsburg, at that time the county-seat, without describing it, or restricting their action to the sale of the property which was properly connected with the proposed change in the county-seat. This purpose was not expressed in the title, and for this reason it was held to be repugnant to the constitution.

Conceding that decision to be right, does it apply to the case under consideration? We think not. In this case, the act had but one main object; that was to authorize the construction of a railroad through the territory of West Virginia. All other provisions of the

bill are auxiliary to that object, and have a necessary or natural connection. The power conferred by the act upon the board of supervisors of Jefferson county to submit to a vote of the people the question of a subscription to the capital stock of the company, although it was not expressed in the title, yet was an incident to the main object, and in no sense that we can perceive was it a different and distinct object from the main purpose of the law.

The object of this constitutional provision is to prevent the union of incongruous matters, having no relation to each other. It is to be found in the constitution of a number of the states, and has received judicial construction. We think, upon a close examination of the cases decided in Indiana, Michigan, New York, and Illinois, upon similar constitutional provisions, that it will be found that the courts hold that, where the law embraces several objects, all of which are matters properly connected with its chief object, that it is unnecessary that the title of the act should contain every purpose of the law.

The constitution of Texas contains a provision similar to the one under consideration. It declares that "every law enacted by the legislature shall embrace but one object, and that shall be expressed in the title." This provision has received judicial interpretation in the case of *City of San Antonio* v. *Mehaffy*, 96 U. S. 312. The legislature of that state passed "An act to incorporate the San Antonio Railroad Company." Like the law we have under consideration, it had other provisions, one of which was "to authorize the city of San Antonio to take stock in the company, and issue bonds to pay for the same." The supreme court of the United States in that case held the law to be constitutional, and that it had but one object, and that was expressed in the title. In the case of *Unity* v. *Burrage*, 103 U. S. 458, the supreme court was again called upon to pass upon a clause of the constitution of Illinois similar, if not almost identical, in phraseology to the one we have under consideration; and the court again affirmed its ruling in the case of *San Antonio* v. *Mehaffy*, citing with approbation the case of *Belleville, etc., R. Co.* v. *Gregory*, 15 Ill. 20. Still later, the supreme court of Illinois maintained this doctrine in *Ross* v. *Chicago R. R.*, 77 Ill. 127. This long line of decisions was recently reviewed by the supreme court of the United States in the case of *Mahomet* v. *Quackenbush*, 117 U. S. 508, S. C. 6 Sup. Ct. Rep. 858, and the chief justice, speaking for the court, again sustained their previous rulings upon this question. The decisions of the highest tribunals in the states of Indiana, Michigan, and Wisconsin are to the same effect, upon a similar provision in their respective constitutions. In some other states,—California, and possibly Missouri,—the courts hold differently; but not only is the weight of authority in the highest tribunals in the states against them, but the law is, we think, well settled otherwise. *Montclair* v. *Ramsdell*, 107 U. S. 147; S. C. 2 Sup. Ct. Rep. 391; *Jonesboro City* v. *Cairo & St. L. R. Co.*, 110 U. S. 192; S. C. 3 Sup. Ct. Rep. 67; *Otoe Co.*

v. *Baldwin*, 111 U. S. 1; S. C. 4 Sup. Ct. Rep. 265; *Ackley School-dist.* v. *Hall*, 113 U. S. 135; S. C. 5 Sup. Ct. Rep. 371.

Independent of the express adjudications we have noticed upon this question, it would be clearly the duty of the court to adopt a liberal rule of interpretation, so as to give effect to the legislative intention, unless its action was clearly so repugnant to the constitution as to violate well-known principles of construction. This liberal rule of construction should always prevail, before courts annul a statute by judicial action. We are therefore of opinion that the third section of the act of February, 1870, is not in conflict with the constitution of this state, and must therefore be held valid. This conclusion, we think, is not only founded in reason, but, as we have seen, is sanctioned by authority.

It is next suggested that the authority conferred upon the supervisors by this act is, at least, questionable, if in fact there is any warrant in the constitution for its exercise. By the terms of the fifth section of the act in question, power was delegated by the legislature to the supervisors of Jefferson county to submit the question of a subscription to the capital stock of the said railroad to all the male tax-payers of the county, at a special election, above the age of 21 years, not under any of the disabilities mentioned in the act. It is urged that the power thus conferred by the legislature is not warranted by the constitution. This is a delegation of power to local authorities, for local purposes. There is nothing in the constitution which inhibits the legislature from the exercise of such a power. In the absence of such a restriction upon the legislative power, the exercise of it cannot be questioned. It has been frequently done by the legislatures of various states upon similar provisions in their constitution, and, in almost every instance where the power has been questioned, the courts have sustained the legislative view of its exercise. The power of taxation for local and municipal purposes has most always been delegated. The reason for it is founded in necessity, and the exercise of the power cannot now be questioned.

The next objection taken to the validity of the act is that the legislature did not provide for the submission of the question of making a subscription "to a vote of the people," but only to a portion or class of them, to-wit, "the male tax-payers of the county over 21 years of age," etc. This provision of the constitution is similar to the constitutions of several of our sister states. The present constitution of Virginia, as well as the one in force before the war, both contain similar provisions to the one under consideration. A similar question to the one now raised was presented under the old constitution of Virginia in the case of *Bull* v. *Read*, 13 Grat. 78. In that case the legislature of Virginia passed an act establishing a system of free schools in a particular district in the county of Accomack, but provided that the act "shall [should] not be carried into effect until the people of the district shall, [should,] by a vote taken for the pur-

pose, approve it." Under this constitution every white citizen, 21 years old, etc., was qualified to vote. It will be observed, however, that the act required the vote to be submitted to the people of the district for the purpose of their approval, instead of white male citizens, who were the qualified voters under the constitution. In that case it was claimed that the question of submission to the people of the district was a clear violation of that clause of the constitution which defines the qualifications of voters. But the court overruled this objection, maintaining the validity of the act, and referred to the case of *Slack* v. *Maysville & L. R. Co.*, 13 B. Mon. 1, in support of its conclusion, in which it was held to be no objection to the mode of exercising the power of imposing local taxation for local purposes that it was referred to a vote of a majority of those to be affected by it. Such was the course pursued in the case before us. The question of submission was referred to a vote of all the male tax-payers, whom the legislature supposed to be the majority of the people to be affected by the act, and we must therefore conclude that this objection cannot be sustained.

It is further suggested that, by the terms of the constitution, taxation must be equal and uniform, and that in this instance such is not the case. We concede that such is the fundamental law, but we fail to find any discrimination against complainant's property, or any violation of the constitution in the law as passed, which would subject its property to illegal or unjust taxation. There is, in fact, no allegation in the bill that the property of complainant is not taxed at the uniform rate and upon a basis of equality with other property taxed for the same purpose in the county and state. Such an allegation in the bill, if sustained by proof, would entitle the complainant to such a revision of the assessment of its property as would secure to it both equality and uniformity of taxation, as required by the constitution; but, in the absence of such an allegation in the bill, sustained by proof, the court is unable to see how it can pass upon a question not raised by the pleadings, but only presented in the brief filed by complainant's counsel.

Another contention of the plaintiff is that at the time of the passage of the act of 1870, and the election held under it, there was no authority to charge it with any part of the county levies, to pay any subscription voted to the capital stock of the Shenandoah Valley Railroad Company, for the reason that by the statute law then in force, and which continued to be the law of the state until the session of the legislature in 1879, "all railroad property was exempted from taxation to pay subscription of counties to other railroads." It is conceded that when the act of 1870 was passed, that, by the laws then in force, exemption of the plaintiff's property was secured from taxation for the purpose of paying subscriptions to other railroads. The law, however, was a general one, passed long subsequent to that which granted the plaintiff a license to do business as a corporation in this

state. It applied alike to all railroad corporations. There was no such exemption to this corporation in the original act which gave it power to do business here. The repeal of the act which secured the exemption did not divest it of any right secured by its charter. By its repeal the corporation was placed upon the same footing it stood when the law was enacted that secured the exemption. Exemptions are always matters of expediency, and not of right, granted on consideration of public policy, which the law-making power can recall at its pleasure. In this instance the legislative power asserted what we must hold to be an undisputed right, which, in its clemency to this class of corporations, it had not before enforced, and which was clearly within its power under the constitution. This is the view, we think, the legislature entertained when it passed the act; and our respect for its intention forces this conclusion upon us, from which we see no escape.

It is true that the plaintiff had, without any aid from either the county or state, constructed its road, and it would seem to be unjust to require it to aid in the construction of a rival road. But this is a question which addressed itself alone to the legislature, and is, we think, outside of judicial domain. It was for that power to determine whether the act, when proposed, "was in derogation of natural rights" or not. It has passed upon the question, and we think the plaintiff is concluded by its action. The demurrer must therefore be sustained to the bill as it now stands.

BOND, J. I concur in the above opinion.