Crawford et al. *v.* Clark et al.

---

JOHN H. CRAWFORD et al., Appellants, *v.* LANTROM J. CLARK et al., Appellees.

APPEAL FROM COOK.

Carriers by coasting vessels, should, on landing goods, give notice to the owner of the fact, or if to be delivered to a consignee, and he refuse to receive them, the carrier must safely secure them, or he will be liable for any loss that may occur.

THIS case was brought by the defendants in error, in an action of trespass on the case; the declaration contains six counts. The first substantially alleges, that the defendants, before and at the time of the delivery of the goods hereinafter mentioned, were common carriers of goods and chattels for hire, from Cleve-

land to Chicago. That on the 4th day of September, 1852, the plaintiffs caused to be delivered to them, as common carriers, at Cleveland, and the defendants then and there received from the plaintiffs a large quantity of iron and steel, to wit, 5,000 pounds of iron and seven bundles of steel, of the value of $500, to be conveyed by defendants on the propeller " Granite State," from Cleveland to Chicago, and to be delivered to plaintiffs at Chicago, in good condition, (with the usual exceptions,) for certain reasonable freight and reward for each hundred pounds. And although the said propeller, on the 11th day of September, arrived safely at Chicago, and no leakage of oil, &c., or dangers of navigation prevented, yet the defendants did not deliver the said iron and steel, but they were wholly lost to the plaintiffs.

The second count alleges, that on the day and year aforesaid, defendants undertook to convey for plaintiffs, from Cleveland to Chicago, by the propeller " Granite State," 174 pieces of iron, 19 bundles of iron, 7 bundles of steel, and 30 kegs of nails, 12,048 pounds, worth $500, which they failed to do, but said goods were wholly lost to plaintiffs.

The third count alleges, that the plaintiffs delivered to defendants, September 4, 1852, other iron, &c. of same description, quantity, and weight, as in second count, to be conveyed from Cleveland to Chicago, by propeller " Granite State," for freight, to J. Peck & Co., but that 5,000 pounds of said iron, &c. were lost.

The fourth count alleges, that on the 9th day of August, 1852, plaintiffs, by their agents Graff, Lindsay & Co., caused to be delivered to defendants at Pittsburgh, Pennsylvania, other goods, to wit, 174 bars of iron, 19 bundles of iron, 7 bundles of spring steel, and 30 kegs of nails, 12,048 pounds, worth $500, to be conveyed by a certain canal boat of the Union line, from Pittsburgh to Chicago, to be delivered, for plaintiffs, to Dole, Rumsey & Co., for 35 cents on each hundred pounds; that the defendants, by their agent G. M. Harton, accepted said goods for the purpose above mentioned, but they were wholly lost to plaintiffs.

Fifth count substantially the same as fourth.

The sixth count alleges, that on the 20th day of September, 1852, plaintiffs were lawfully possessed of iron and steel, other than as aforesaid, of the value of $500; that they casually lost said iron and steel out of their possession, and the same afterwards came into the possession of defendants by finding. Yet the defendants, knowing said iron and steel to be the property of plaintiffs, have not, as yet, delivered said iron and steel, or any part thereof, to plaintiffs, but converted and disposed of

Crawford et al. *v.* Clark et al.

said iron and steel to their own use, to the damage of plaintiffs of $500. And, therefore, they bring suit, &c.

The defendants pleaded the general issue, and gave notice that they would prove as follows: That in 1852, when said goods were delivered in Chicago by defendants, it was and now is the custom for boats and vessels engaged in the carrying trade on the lakes, in delivering goods to consignees at Chicago, to land their whole cargo on their own dock, and on only one dock, and never to deliver a part of a cargo at one place on the Chicago river, and then move the vessel to another place and deliver the remainder; never to move the vessel to the docks of different consignees and put off the cargo at different places. That in 1852 such a delivery, by a vessel, of the whole cargo on their own dock, and no other, was considered, by the uniform custom and usage of warehousemen and forwarders, a good, complete, and sufficient delivery, to discharge and exonerate the carriers. That plaintiffs and their agents at Chicago, Dole, Rumsey & Co., had notice, at the time, of such custom, and that all the said goods of plaintiffs were so delivered on the dock of said propeller, at Chicago; that such delivery was sufficient, and a complete performance of the contract.

Also, that the defendants received the iron to transport to Chicago; that the same was put on board the " Granite State," loaded with an assorted cargo, consigned to consignees along the Chicago river; that said propeller runs in Crawford, Chamberlain & Co.'s Ogdensburg line; that said propeller runs to the dock of the agent of said line, and that all doing business with said propeller and line know who are the agents of said line; that it is and always has been the custom of steam vessels to run to a particular dock and there unload their entire cargo, and that the consignees thereof come to said dock and take goods so consigned to them. That said custom is known, that notifying consignees that a propeller has goods on board consigned to them, and a landing upon such wharf is a good and valid delivery, and releases the carriers.

That Dole, Rumsey & Co., the consignees, had notice that said propeller had goods on board, and that they were being delivered on the dock where said propeller was lying in Chicago; and that said iron and goods in the plaintiffs' declaration described, were landed on such dock.

Also, that it is the custom for consignees to receive goods consigned to them at such dock, and that such is a delivery to the consignees; that said propeller " Granite State " had an assorted cargo, and landed all her cargo at the dock of George A. Gibbs & Co. in Chicago; that Dole, Rumsey & Co. had

Crawford et al. *v.* Clark et al.

notice that said goods were on board and being delivered, and that the same were all delivered on said dock to the plaintiffs' consignee, which facts the defendants will prove in defence of the plaintiffs' claim.

The plaintiffs introduced in evidence the bill of lading, marked " A.", of which the following is a copy of the part pertinent: —

| 249 " C " Clark & Gilbert, Rockford, Ill. Care as above. (J. Peck & Co.,) Chicago. | 174 19 7 30 | Pieces Iron, } Bundles Iron, } Bundles Steel, Kegs Nails, | 8,214 654 3,180 | 12,048 | 35 | 42 | 17 |
|---|---|---|---|---|---|---|---|

Plaintiffs' instructions given. If the jury believe the clerk of Dole, Rumsey & Co. applied for the iron, and the servants of defendants told him they had no " C " iron, and the same was lost or delivered to any one else, the defendants are liable for what was lost.

If the jury believe that the contract between plaintiffs and defendants was, that the iron should be consigned and delivered to Dole, Rumsey & Co., and that said iron was consigned to J. Peck & Co., and was not delivered to Dole, Rumsey & Co., and thereby any part of said iron was lost, the plaintiffs are entitled to recover.

If the jury believe that the iron was put on the dock of Gibbs & Co., but was not actually taken possession of or delivered to Dole, Rumsey & Co., then the defendants are liable, unless they shall have shown that they deposited the iron in some safe warehouse for plaintiffs.

If the jury believe that the iron was put on Peck & Co.'s wharf, it was the duty of defendants to have separated the same, and give Dole, Rumsey & Co. due notice that the same was so put off and separated; and if they neglected or refused to take the same, it was the duty of defendants to place it in a safe storehouse, and if their neglect to do so was the occasion of the loss of any part of the iron, the defendants are liable therefor to plaintiffs, — to the giving of which defendants objected.

This cause was tried before MORRIS, Judge, at December term, 1853, of Cook Circuit Court.

H. F. WAITE, for appellants.

GOODRICH & SCOVILLE, for appellees.

Crawford et al. *v.* Clark et al.

CATON, J. The question presented by this record is of deep commercial interest. The law seems to be so well settled by general usage, of which the courts will take notice without proof of the custom, that vessels engaged in foreign commerce are not bound by a bill of lading in the ordinary form, to deliver goods brought from a foreign country, to the consignee personally, but it is a discharge of the obligation which the carrier has assumed, if he lands them at the usual wharf of such vessel in a proper manner, or other safe landing at the port of delivery, and gives due and reasonable notice thereof to the consignee. Here the bill of lading was in the usual form, and the defendants below insist that by observing this rule they were discharged from their contract, while the court instructed the jury that they were liable if the iron was not actually delivered to or taken possession of by Dole, Rumsey & Co., who were the consignees, unless they showed that they put the iron in some safe warehouse for the plaintiffs. The iron which was lost did not belong to the consignees, but was the property of the plaintiffs, who resided in the country. The goods were shipped from Pittsburgh, and were taken on board the propeller at Cleveland, so that we have the naked question presented, whether the rule which seems to govern the contracts of carriers for the transportation and delivery of goods from foreign ports, is also to control the coasting trade. This rule which relates to foreign commerce originated in commerce upon the high seas, and it is there where we find it most generally applied, and we consider it still an open question whether it is applicable, and should be adapted to the trade upon our inland lakes and rivers, although the goods may be brought from the dominions of another sovereignty. That question we are not called upon to decide in this case, nor does it become our duty now to inquire into the reasonableness of the rule when applied to foreign commerce as carried on upon the high seas. It is sufficient that we find that the law has not settled this question of right, as arising out of a contract for the transportation of goods from one port or place to another in the same country. That is generally left to be settled by the custom of the port or place where the contract is to be performed, where, as in this case, the precise mode of performance is not determined by the contract itself. But here the question is raised independent of any such custom, and we are called upon to determine it as a matter of law simply. In the case of the Grafton, 1 Blatchford, 175, the court said, "that in a well settled course of trade, such as existed in New York, in relation to coasting vessels, the delivery of the cargo upon the dock with notice to the owners of the time and place of un-

loading them, placed the cargo at their risk, and discharged the vessel from liability. But that in case the cargo was addressed to a mere consignee, the vessel would be under the further obligation to secure the property after it was unladen if no consignee appeared, or if he refused to accept the goods." The judgment at once assents to this additional duty imposed upon the carrier. The safety of those who are compelled to intrust their property to the hands of strangers to be transported, requires this protection, and the wonderful increase of commerce and the vast accumulation of freights at commercial points, and the consequent liability to confusion and miscarriage, admonish us that the owners of these goods should receive every reasonable protection. The tendency of the age, especially among carriers, is to attain the greatest possible despatch, and this materially begets a disposition among all their servants, to hasten every thing and get the goods off their hands as soon as possible, almost regardless of every other consideration, and this disposition, at least, should be so far tempered by responsibility as to admonish them that they are paid for taking care of goods as well as forwarding them. It is but little satisfaction to the owner to know that his goods have been forwarded promptly, if they are lost or stolen after they get through. If the owner is his own consignee, and is notified of the landing of his goods at a proper place, and they are protected a reasonable time for him to take them away, and he neglects to do so, he has less cause to complain of their loss, which may be fairly attributed to his own neglect. But the case is very different when the consignee is not the owner. It is, no doubt, the duty of every warehouse-man to receive and take care of all goods consigned to him, where he has the capacity to store them, and he is liable for neglecting or refusing to do so. But this liability of the consignee will often prove a very inadequate security to the owner. The consignee may not be a warehouse-man, and in that event he would not be bound to receive the goods, and thus the owner would have no one responsible for their loss, while the most wanton waste might be committed by the carrier in suffering them to lay upon the dock and be destroyed by the weather, when he knew the consignee refused to receive them. If I consign my trunk, or a box of books, or any other article to a supposed friend, at the port of destination, who refuses to receive them, may the carrier leave them upon the dock to be plundered by thieves, or destroyed by the weather, or lost by accident? Or rather should he not put them in a safe warehouse, with notice of the deposit to the owner, or at least to the consignee? A due regard to the great interests

Crawford et al. *v.* Clark et al.

which are constantly *in transitu* in this country, must require this. While it is indispensable to the interests of the owner, it is no hardship to the carrier. So long as we are bound down by no arbitrary rule of law in this case to excuse him from this duty, we do not hesitate to say, that the best interests of commerce require that we should hold him to its performance. We approve of the instruction given by the circuit court upon this point, and, according to the testimony of two of the witnesses, it seems to be in conformity to what is required by the course of trade at the port of delivery.

The seventh instruction which was asked for the defendants below and refused by the court, remains to be considered. That instruction is as follows: " That the jury shall find from the evidence in this case that there exists a uniform and clearly established usage by which propellers and steamboats leave their freight at their usual dock, and that if the consignee has notice of such landing, it is by such custom deemed a delivery to the consignee, and that the defendants landed the iron in this case at their usual dock, and that Dole, Rumsey & Co. or their check clerk had notice of said iron so landed, and were there while it was being delivered, and the iron was piled up for the consignees of the plaintiffs, the law is with the defence." Without again examining the reasonableness of such a custom, it is very clear that the instruction, as asked, does not require such a proof of the usage as would entitle it to be considered as entering into and forming a part of the contract of affreightment. This question of commercial usage was considered by this court, with some care, in the case of Dixon *v.* Dunham, 14 Ill. 324. It was there held, as it has been held everywhere else, that a usage to become binding upon parties, must have antiquity as well as uniformity and universality, whereas this instruction supposes the custom of a day may become binding upon parties, so as it be uniform and clearly established, whether the jury might believe that the parties contracted in view of it or not. Commercial interests require that the well-established rules of law, by which the customs of a particular place become incorporated into the contracts of parties, should not be relaxed. They may be well admitted, when they are not inconsistent with the contract of the parties, when they are reasonable, of long standing, uniform, clearly established, and well understood, and not inconsistent with any rules of law. By comparing the instruction with this test, it will be seen at once that it was properly refused.

The judgment must be affirmed.

*Judgment affirmed.*