LEWIS D. LEACH

*v.*

THE PEOPLE *ex rel.* O. P. Patterson.

· *Filed at Mt. Vernon June 20, 1887.*

1. SPECIAL LEGISLATION—*under constitution of 1848—township organization and the county court—management of county affairs.* Section 6, of article 7, of the constitution of 1848, which provides that "the General Assembly shall provide, by a *general* law, for a township organization," etc., relates to the management of the affairs of the several towns of counties adopting the system, and not to the management of the fiscal affairs of counties.

2. The constitution of 1848 provided that as to such counties as might adopt the township organization, the General Assembly *might* dispense with the county court for the management of the county fiscal concerns, and the affairs of such counties *might* be transacted in such manner as the General Assembly should provide. In this the legislature was not restricted to general laws.

3. The adoption of the township system did not necessarily, under this constitutional provision, do away with the county court for the transaction of county business. The management of the county affairs might still be left to the county court, or intrusted to any other tribunal created for that purpose.

4. STATUTE—*whether title embraces the subject.* The act entitled "An act to change the time of electing certain officers in a county therein named," approved February 28, 1867, is in violation of section 23, of article 3, of the constitution of 1848, in not having its subject or main object expressed in its title. The main subject of the act in question was, the change of the composition of the board of supervisors in Wayne county,—to diminish the number of the members of the board as provided by the general Township Organization law, and to change the mode of their election, from towns singly, to groups of towns. This subject was not expressed in the title, nor was it in any way germain to the purpose which was expressed in the title.

5. OFFICERS DE FACTO—*validity of their acts—of officers acting under law which is not constitutional.* The acts of *de facto* officers under color of legal title to the offices the duties of which they are assuming to perform, are valid as to the public, and so far as they concern the rights of third persons who have an interest in their acts done.

6. The legislature passed an act which proved to be in violation of the constitution, whereby the management of the affairs of a county acting under township organization was attempted to be taken from the super-

visors of the several towns, and vested in a board of supervisors consisting of only five members, instead of fifteen, as before, to be elected in five districts, and hold their offices for four years. Supposing the act to be a valid enactment, such board of five were elected, and for a time acted without question, as the legally constituted tribunal having charge of the county affairs: *Held,* that their acts were valid and binding as those of *de facto* officers under color of office.

APPEAL from the County Court of Wayne county; the Hon. JOHN KEEN, Jr., Judge, presiding.

Mr. B. TOMPKINS, and Messrs. BELL & GREEN, for the appellant:

There can be no *de facto* officer or tribunal to act under the provisions of an unconstitutional act creating an office. *Norton* v. *Shelby County,* 118 U. S. 425; *Hildreth* v. *McIntire,* 1 J. J. Marsh. 206.

An unconstitutional act is not a law. It confers no rights, it imposes no duties, it affords no protection, it creates no office. *Norton* v. *Shelby County, supra.*

An office is a position created by lawful authority, through which ministerial, executive, judicial or legislative duties may be performed for the public. It must be *de jure.*

The office of a court or "board" is but one, although composed of many persons. The constitution of 1848 (sec. 6, art. 7) requires a *general* law for township organization, whereby the county business may be taken from the county court. *People* v. *Brown,* 11 Ill. 478; *People* v. *Maynard,* 14 id. 419; *People* v. *Cochran,* 15 id. 142; *People* v. *Garner,* 47 id. 246; *Jasper County* v. *Ballou,* 103 id. 745.

By the vote of the people in 1860, under the general law to organize under township organization for the government of county affairs, it was fixed that the board should consist of fifteen townships, with fifteen supervisors, to constitute the board a *de jure* body. A majority of all the supervisors was necessary to constitute a quorum. The legislature was powerless to provide any other office or board.

The assumption of the five persons to act as the board of supervisors of fifteen towns and fifteen supervisors, is but an attempt to create an office by virtue of an unconstitutional act. It is an attempt to destroy the constitutional board, and supply it by creating an unknown office.

If the power is conferred on one set of officials or individuals, it can not act through or by another, or by a different set of officials or persons. *United States* v. *City of Columbus,* 21 How. 356; *Schuyler County* v. *People,* 25 Ill. 181; *Clark* v. *Hancock County,* 27 id. 305; *McClure* v. *Oxford,* 94 U. S. 429; *Gaddis* v. *Richland County,* 92 Ill. 119; *County of Jasper* v. *Ballou,* 113 U. S. 750.

Mr. GEORGE HUNT, Attorney General, for the appellee:

The board of five supervisors were *de facto* officers, whose title can not be questioned collaterally. Both the general law and the law specially applicable to Wayne county, provided for a board of supervisors. The board of supervisors had the same power under one law that it had under the other. The only difference was in the composition of the board and the manner of electing its members. The official body representing the county, and referred to as having such power, both in the general and special act, was not the *member,* nor the *supervisor,* but the *board* of supervisors.

An officer *de facto* is not a mere usurper, nor yet within the sanction of law, but one who, *colore officii,* claims and assumes to exercise official authority, is reputed to have it, and the community acquiesces accordingly. *Hussey* v. *Smith,* 99 U. S. 20; *Wilcox* v. *Smith,* 5 Wend. 231; *Gilliam* v. *Reddick,* 4 Ired. 368; *Brown* v. *Lunt,* 37 Me. 433; *Railroad Co.* v. *McPherson,* 35 Mo. 13; *Parker* v. *Kett,* 1 Ld. Raym. 658.

As to who is an officer *de facto*, and the binding force of his acts as such, see *State* v. *Anderson,* 1 Coxe, (N. J.) 318; *Commissioners* v. *Fowler,* 10 Mass. 290; *Fowler* v. *Bebee,* 9 id. 231; *Parker* v. *Baker,* 8 Paige, 428; *Laver* v. *McGlachlin,* 28 Wis.

364; *In re Boyle,* 9 Wis. 264; *Conover* v. *Devlin,* 24 Barb. 587; *Burton* v. *Patton,* 2 Jones' L. 115; *Kimball* v. *Alcorn,* 45 Miss. 151.

An officer appointed or elected under an unconstitutional law, before the same is adjudged void, is a *de facto* officer. *State* v. *Carroll,* 38 Conn. 449; *Cocke* v. *Halsey,* 16 Pet. 71; *People* v. *White,* 24 Wend. 520; *Carlton* v. *People,* 10 Mich. 250; *Commonwealth* v. *McComb,* 56 Pa. St. 436; *In re Ah Lee,* 6 Saw. 410; *Ex parte Strang,* 21 Ohio St. 610; *People* v. *Bangs,* 24 Ill. 184; *Mapes* v. *People,* 69 id. 523; *Barlow* v. *Standford,* 82 id. 298.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

This was an application made by the collector of taxes for Wayne county, in this State, for judgment for delinquent taxes against certain real estate of the appellant in that county. The taxes delinquent were levied to pay interest on $200,000 of bonds, purporting to be bonds issued by Wayne county in 1869, and in January, 1870,—$100,000 as a donation to, and $100,000 for the stock of, the Illinois Southeastern Railroad Company, whose railroad runs through said county.

By an act of the General Assembly, approved February 28, 1867, entitled "An act to change the time of electing certain officers in a county therein named," it was enacted "that the board of supervisors in Wayne county shall consist of five persons, to be elected in the following manner, to-wit: The townships of Four Mile, Hickory Hill and Arrington shall constitute the first electoral district of said county, and shall be entitled to one member of said board; the townships of Big Mound, Lamard, Jasper and Barnhill shall constitute the second electoral district in said county, and be entitled to two members of said board; the townships of Leech, Massillon, Mount Erie and Elm River shall constitute the third electoral district in said county, and be entitled to one member of said

board; the remainder of said Wayne county shall constitute the fourth electoral district, and shall be entitled to one member of said board." The second section provides that the members of the board shall be elected in each district on the first Tuesday in April, 1867, and each four years thereafter. The third section provides for the organization of the board so composed, and that when organized it shall perform all duties enjoined upon, and shall have all the powers and privileges of, the board of supervisors, acting under the general township organization laws of this State, and that any three of the board shall constitute a quorum for the transaction of any business.

The objection taken to the tax is, that the bonds are not valid, their alleged invalidity consisting in their having been issued under authority of this board of supervisors thus constituted. It is contended that the statute aforesaid is unconstitutional.

The county of Wayne was organized under township organization in 1860, under the general law for township organization, with fifteen towns, the general law being in pursuance of section 6, article 7, of the constitution of 1848, as follows: "The General Assembly shall provide, by a general law, for a township organization, under which any county may organize whenever a majority of the voters of such county, at any general election, shall so determine; and whenever any county shall adopt a township organization, so much of this constitution as provides for the management of the fiscal concerns of the said county by the county court, may be dispensed with, and the affairs of said county may be transacted in such manner as the General Assembly may provide."

February 26, 1867, the legislature passed an act chartering the Illinois Southeastern Railroad Company, (2 Private Laws of 1867, p. 750,) and one among its provisions was: That the county board, or board of supervisors, where the county had adopted township organization, of any county through which

the road might pass, was authorized, under a vote of the people of the county, to donate to the railroad company, towards building the railroad, any sum not exceeding $100,000, and might order the clerk of the county board, or board of supervisors of the county, to issue bonds of the county to the amount donated. By an amendatory act, approved and in force February 24, 1869, counties through which said railroad should pass were authorized to subscribe to the capital stock of the railroad, and to issue bonds therefor, upon a vote being had in favor thereof. All subscriptions to the capital stock of or donations to the railroad company, theretofore made by any county, were, by this act, legalized.

On February 25, 1868, an election was had upon a call of this board of supervisors, composed of five persons, on two propositions submitted by them,—one to donate $100,000, the other to subscribe to the stock of the railroad company $100,000. The vote was in favor of both propositions.

It is insisted that this act in relation to the board of supervisors in Wayne county is a special act, and so in violation of section 6, of article 7, of the constitution of 1848, that "the General Assembly shall provide, by a *general* law, for a township organization," etc. Township organization respects towns, and the conduct of the affairs of towns, not of counties. For management of the latter's affairs there is separate provision from that of township organization. The section itself recognizes the distinction. It provides that whenever any county shall adopt township organization, so much of the constitution as provides for the management of the fiscal concerns of the county by the county court may be dispensed with, and the affairs of the county may be transacted in such manner as the General Assembly shall provide,—that is, that the General Assembly *may*, not *shall*, dispense with the county court for the management of the county's fiscal concerns, and the affairs of the county *may* be transacted in such manner as the General Assembly shall provide,—as they shall provide, unrestrict-

edly,—not as they shall provide by general law. We do not perceive why, consistently with this section, the legislature might not have declined to dispense with the county court for the management of the fiscal affairs of Wayne county, and have suffered that court to remain as it was, in that respect; or why there might not have been a different body for the transaction of the affairs of Wayne county from such as existed in other counties, or a body differently constituted. By the constitution of 1848 there was no prohibition of the enactment of special or local laws. This act of February 28, 1867, respects only the composition of the board of supervisors of Wayne county, for the management of the affairs of Wayne county. It does not touch the matter of township organization for the transaction of the affairs of towns, and does not, as we conceive, contravene the constitutional provision in respect of a general law for township organization.

There is a particular, however, wherein this law must be regarded as liable to a constitutional objection. The constitution of 1848 contained the provision: "And no private or local law which may be passed by the General Assembly shall embrace more than one subject, and that shall be expressed in the title." (Art. 3, sec. 23.) The title here is, "An act to change the time of electing certain officers in a county therein named." The main subject of the act in question was, the change of the composition of the board of supervisors in Wayne county,—to diminish the number of the members of the board as provided by the general Township Organization law, and to change the mode of their election, from towns singly, to groups of towns. This subject was not expressed in the title, nor was it in any way germain to the purpose which was expressed in the title. To change the time of electing certain officers signified that particular merely,—the change of the time of election,—and did not at all embrace the main object of the law. The title was deceptive and misleading, giving no intimation of the more important purposes of the act. Without disre-

gard of this constitutional requirement, we do not see that we can do otherwise than to hold this act to be violative thereof, and therefore void. See *The People* v. *Mellen*, 32 Ill. 181; *The People* v. *Inst. Prot. Deaconesses*, 71 id. 229; *Middleport* v. *Ætna Life Ins. Co.* 82 id. 562; *Welch* v. *Post*, 99 id. 471.

The act then being held to be not valid, does it follow, as contended by appellant, that the acts of the official body elected under the law, in compliance with its provisions, are null and void? This body was the *de facto* board of supervisors of Wayne county, with color of legal title, and it is the well settled principle that the acts of such officers are valid when they concern the public, or the rights of third persons who have an interest in the act done. But it is said that this principle applies only where there is a *de jure* office for a *de facto* officer to fill,—citing the recent case of *Norton* v. *Shelby County*, 118 U. S. 425, as so holding; and it is insisted there was no *de jure* board of supervisors of Wayne county. Wherever township organization prevails, there is, in every county, a board of supervisors for the transaction of the affairs of the county. The act in question merely changed the number of the members of the board from fifteen to five, and the mode of election from towns singly, to two or more towns unitedly, and the term of office. Nothing was added to or taken from the powers or duties of the board. After the passage of the act there still remained the board of supervisors of Wayne county, the official body for the management of the county's affairs, and the persons elected as members, under the act, went on, under the sanction of the statute, and exercised the powers and duties of the board of supervisors of Wayne county without question. There was no rival board, but it was the sole acting board of supervisors in Wayne county. Were not the public justified in relying upon it as the board of supervisors of Wayne county?

In *Norton* v. *Shelby County, supra,* the opinion in the case of *State* v. *Carroll*, 38 Conn. 449, is referred to as containing an admirable statement of the law upon the subject of the validity

of the acts of *de facto* officers.　In the *Connecticut case* it was said : "An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons, where the duties of the officer were exercised :　First, without a known appointment or, election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be.　*　*　*　Third, under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise,—such ineligibility, want of power or defect being unknown to the public.　Fourth, under color of an election or appointment, by or pursuant to a public, unconstitutional law, before the same is adjudged to be such."

It appears to us that the case at bar is one which comes within the category last named.　There was such a legal official body known to the law as the board of supervisors of Wayne county, the powers and duties of which official body were in the present case exercised by persons, under color of an election, as members thereof, in pursuance of a public, unconstitutional law.　The real cause of complaint is, that the office legally existing was illegally filled.　The cases are numerous which hold that the acts of a public officer elected or appointed under an unconstitutional law are valid as respects the public and third persons, a number of which are cited in the case of *State* v. *Carroll*, and referred to in *Norton* v. *Shelby County*.　In *The People ex rel.* v. *Bangs*, 24 Ill. 184, a law providing for the election of a judge was held unconstitutional and the election under it void, yet it was said the judge so elected had color of office, no doubt, and acting as he did, under color of office, that his acts were as valid, of course, as if the law had been constitutional.　In *Trumbo* v. *The People*, 75 Ill. 561, a school district

was held not to be legally established. So far as that alleged district was concerned, there was no such legal school district, and there was no *de jure* office of school director of that alleged school district; yet upon a proceeding to collect a tax levied by persons assuming to be and acting as school directors of the district, the tax was sustained, it being held that the school directors were officers *de facto* by color of an election, and that their acts, when they concerned the public and third persons, were as valid as though they were officers *de jure*,—that in such a collateral proceeding the legality of the formation of the school district could not be inquired into, and that it could only be done by information in the nature of a *quo warranto*.

If the local law providing for the election of five members of the board of supervisors of Wayne county be unconstitutional, then the general law in regard to the board of supervisors remained in force. Under the general law, the town supervisors were members of the board of supervisors by virtue of their office as town supervisors, and under the general law they held their offices until others were elected or appointed in their places, and qualified. The case then would be, that there were two elected sets of members of the board of supervisors of Wayne county,—one of fifteen members, elected under the general law, the other of five members, elected under the local law. There was, all the while, the legally established office or official body of the board of supervisors of Wayne county. And so far as respects the present question, there would not seem to be any substantial distinction between this case and that of *The People* v. *Bangs*, where there were two elected judges, the one who was rightfully elected, and the one elected under the unconstitutional law, and it was held that the acts of the latter were valid as those of a *de facto* officer. And the same as to the other cases cited and referred to as above mentioned, where there were two officers in respect of the same office, one lawfully elected, the other appointed or elected under an unconstitutional law, and it was held, the latter was a *de facto* officer and his acts were valid.

It is said that the general law requires a majority of the members to constitute a quorum for the transaction of business, which, in Wayne county, under that law, would be eight, and that five members, under the local law, would not be a sufficient number to form a quorum for the transaction of business. But the question in hand is, whether the members elected under the local law are to be regarded as *de facto* officers. If so, then the board which they constituted would be a *de facto* board, and a majority of its members would constitute a *de facto* quorum. After the passage of this local law, the town supervisors of Wayne county, who, under the general law, by virtue of their office, were members of the board of supervisors, and continued such until others were elected in their places, declined all action as such members, and yielded to the persons elected as members under the local law, as the rightful board of supervisors of Wayne county. The latter, under their election, in pursuance of the act of the General Assembly, entered upon the duties of their office, and went on and exercised the powers and duties of the board of supervisors of Wayne county for years, without question of their right to do so. They had the sole management and transaction of the affairs of the county, and did all the official legislative business of the county which there was done. There was no other official body ready and willing to do it. They were recognized and acquiesced in by all the public as the board of supervisors of Wayne county, and to hold their acts to be invalid would be most disastrous to the public interest, and that of individuals who were justified in relying upon such acts as the acts of the board of supervisors of the county. There are present, here, all the elements which, from considerations of public policy and for the avoiding of public inconvenience, have been recognized as going to make up the character of *de facto* officers, whose acts should be held valid,— as officers, by virtue of an election as such, under an act of the legislature; reputation of being public officers and public belief of their being such; public recognition thereof, and.

public acquiescence therein; and action as such unquestioned, during a series of years, with no other body ready and willing to act as the board of supervisors.

We are therefore of opinion that this act of February 28, 1867, in relation to the board of supervisors of Wayne county, even if it be unconstitutional, was sufficient to give color of title that the official board, elected and acting under the law, were officers *de facto,* and that their acts should be held valid, so far as the public and third persons are concerned.

The judgment will be affirmed.

*Judgment affirmed.*

Mr. Justice Magruder, dissenting:

I do not concur in the conclusion reached by the majority.

The bonds in question were issued in 1868 by Wayne county, $100,000 thereof, as a donation to the Illinois Southeastern Railroad Company, and $100,000, as a subscription to the stock of that company. They are alleged to be void, on the ground, that the board of supervisors, so called, which issued them, and which submitted the question of their issue to the votes of the people, was an illegal and unconstitutional body, without power to act in the premises.

The charter of the Illinois Southeastern Railroad Company, passed in 1867, did not give the board of supervisors in counties under township organization any authority to subscribe for the stock of the company, or to call an election for the purpose of voting upon the question of such subscription, or to issue subscription bonds; it only authorized the board to issue donation bonds, and to call an election to vote upon the question of making a donation, in any sum, not exceeding $100,000, to the company to aid in the construction of its road.

By a general law, however, passed November 6, 1849, and entitled "An act supplemental to an act entitled an act to provide for a general system of railroad incorporations," (Sess. Laws of 1849, p. 28,) the legislature authorized any county in the State to subscribe for stock in any railroad company, in

any sum not exceeding $100,000, and conferred upon the county court of such county the power to call an election for the purpose of voting for or against such subscription, and to pay the same in bonds of the county. On April 1, 1851, the legislature passed "An act to provide for township organization," and the fifth clause of the 4th section of the 16th article of that act, (Sess. Laws of 1851, p. 51,) contained this provision: "The board of supervisors of each county in this State shall have power, at their annual meetings, or at any other meeting, to perform all other duties, not inconsistent with this act, which may be required of or enjoined on them by any law of this State, to the county courts." The record in this case shows, that the county of Wayne organized under the Township law, and adopted its provisions by a vote of the people of the county in the year, 1860. The duty of calling an election to vote upon the question of subscribing for railroad stock, and of issuing county bonds in pursuance thereof, which had been imposed upon the county court of Wayne county, prior to its organization under the Township law, was not inconsistent with any of the provisions of such law, and, therefore, devolved upon the board of supervisors of that county after its adoption of township organization. *Prettyman* v. *Supervisors,* 19 Ill. 406.

On February 25, 1868, at an election in Wayne county called by the board of supervisors, two propositions were submitted to the voters and adopted by a majority of the votes cast. One was, that the county should subscribe $100,000 to the capital stock of the Illinois Southeastern Railroad Company, and issue bonds of the county to pay such subscription. The other was, that the county should donate $100,000 to said railroad company, and issue donation bonds to pay the same. If the board of supervisors, as then constituted, had any power to submit the question of donation to the voters of the county and to issue donation bonds, it had the same power to submit the question of subscription for stock and to issue subscription

bonds. Therefore no different rule can be applied in determining the validity of the subscription bonds from that which must govern in considering the validity of the donation bonds.

The seventh section of "An act to incorporate the Illinois Southeastern Railway Company," approved February 25, 1867, and in force February 26, 1867, is as follows:

"Sec. 7. The county court, or board of supervisors (where such county has adopted township organization) of any county into or through which this road or its branch may pass, is hereby authorized and fully empowered to donate to said company, as a bonus or inducement towards the building of said railroad or its branch, any sum not exceeding $100,000, and may order the clerk of the county court, or board of supervisors, as the case may be, of such county, to countersign and deliver such bonds so issued. * * * *Provided,* that no donation by the county court or board of supervisors of any such county shall be of a greater sum than $50,000, until after the question of such larger donation shall have been submitted to the legal voters of such county, at an election to be called, conducted, returns made, canvassed and published in the usual manner of calling, conducting, making returns, canvassing and publishing special county elections. * * * And if a majority of the ballots cast at such an election be in favor of donation, it shall be the duty of the county court or board of supervisors of such county so voting to donate some amount, not less than $50,000 nor more than $100,000, to said company, and to order the issuing of bonds of the county for the amount so provided." 2 Private Laws of 1867, p. 750.

The power to issue the bonds in question is derived solely and exclusively from this act of February 25, 1867, and from the acts of November 6, 1849, and April 1, 1851, already referred to. The body, upon which the power was conferred by these acts, was the board of supervisors of the county. On February 26, 1867, the board of supervisors of Wayne county was organized and constituted, as provided for in the general

28—122 ILL.

Township Organization law of the State. (Sess. Laws of 1851, p. 51; Public Laws of Illinois of 1861, p. 216.) By reference to such Township Organization law, as passed in 1851 and amended in 1861, it may be seen what that board was, and how it was composed.

Under the then existing system of township organization, the county was divided into as many towns as there are townships, according to government surveys. The allegations of the petition in this case, which are admitted to be true, show, that Wayne county was divided into fifteen towns. Each town, at the annual town meeting, elected one supervisor, unless the legal voters equalled or exceeded eight hundred, when it was entitled to one additional supervisor. The supervisor was a town officer, and, as such, had important duties to perform. He was required to take an oath of office, and give bond to the town for the faithful discharge of his duties. He received and paid over all moneys, raised in the town for defraying certain town charges. He was obliged to keep an account of his receipts and expenditures, and, annually, to account with the town clerk, and the two justices of the peace of the town, for his disbursements. He prosecuted, in the name of the town, for certain penalties, given to it by law, and process was served upon him in legal proceedings against the town. He and the town clerk and justices of the peace constituted a board of auditors to examine the accounts of the overseers of the poor and the highway commissioners.

The supervisors of the different towns in the county met annually for the dispatch of business, "as a board of supervisors." There was no such officer, as a member of the board of supervisors, who was elected, as such, by the people. The supervisors of the towns, elected as town officers, and not as county officers, met together once a year, and, when they so met, constituted and were known as the "board of supervisors." The board was simply an assemblage of town supervisors. Each supervisor was required to attend this annual meeting

of the board, and to lay before it certain matters, connected with the interests of his town. The powers of the county, as a body politic, were vested in the board of supervisors. Special meetings could only be held, when requested in writing by at least one-third of the members of the board. A majority of the supervisors of the county constituted a quorum for the transaction of business.

On February 26, 1867, the board of supervisors of Wayne county consisted, under the system here described, of fifteen town supervisors, each elected by one of the fifteen towns, into which the county had been divided. It required eight supervisors to make a quorum. It is manifest, that this board of fifteen supervisors was the board, upon which the power to issue the donation and subscription bonds, now under consideration, was conferred by the acts of the legislature, already referred to.

Thereafter and on February 28, 1867, the legislature passed an act, "approved February 28, 1867," and "in force February 28, 1867," entitled "An act to change the time of electing certain officers in a county therein named." (Public Laws, 1867, p. 102.) Its first section is as follows:

"That the board of supervisors in Wayne county shall consist of five persons, to be elected in the following manner, to-wit: The townships of Four Mile, Hickory Hill and Arrington shall constitute the first electoral district of said county, and shall be entitled to one member of said board; the townships of Big Mound, Lamard, Jasper and Barnhill shall constitute the second electoral district in said county, and shall be entitled to two members of said board; the townships of Leech, Massillon, Mount Erie and Elm shall constitute the third electoral district in said county, and be entitled to one member of said board. The remainder of said county shall constitute the fourth district, and shall be entitled to one member of said board."

The second section provides, that there shall be elected on the first Tuesday in April, 1867, and every four years there-

after, in each of said electoral districts, "one member of the board of supervisors of Wayne county," who shall each hold their office for the term of four years, etc., except in the second district, etc., which shall elect two members, etc.

The third section provides, that said board shall perform all duties enjoined upon the board of supervisors, acting under the general township organization laws of this State, and shall have all the powers and privileges of boards of supervisors acting under such general township organization laws, and that any three of said board shall constitute a quorum for the transaction of any business.

Section 4 provides, that the members of said board shall each receive such compensation per diem as they may fix, not to exceed four dollars per day, for each day "in which said member shall be engaged in attending said court."

Section 5 provides that said board shall hold at least two meetings in each year, and that any special meeting may be called by any two members, etc.

Section 6 provides, that, in case of any vacancy in said board, the county clerk shall advertise a new election, etc.

Section 7 provides, that "all duties, not herein provided for to be done and performed, by virtue of the township organization laws of this State, by the supervisors of towns, in the different towns, shall be done and performed, in said county, by a justice of the peace in such town, who shall be selected by the town clerk, town assessor and town collector, for that purpose, each year," etc.

Section 8 is as follows: "This act shall be deemed and taken as a public act, and be in force from and after its passage."

Under the provisions of this act, five persons were elected, who proceeded to act as the board of supervisors of Wayne county. It was the board, consisting of these five persons, who called the election, held on February 25, 1868, as above stated, and who issued the bonds in controversy in this pro-

ceeding. At a special meeting of this board, held on January 18, 1868, and called on petition of two of the five members, the election in question was ordered, as a special election.

The act of February 28, 1867, is claimed to be unconstitutional upon three grounds. *First,* it is said, that the act in question, being special in its character and having never been submitted to the votes of the people, violates section 6 of article 7 of the constitution of 1848, which provides, that "the General Assembly shall provide, by a *general* law, for a township organization, under which any county may organize whenever a majority of the voters of such county, at any general election, shall so determine," etc. (*People* v. *Brown,* 11 Ill. 478; *People* v. *Couchman,* 15 id. 142; *People* v. *Brayton,* 94 id. 341.) *Second,* that the act in question violates the 5th section of the 9th article of the constitution of 1848, which provides, that "the corporate authorities of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes," etc. (*Cornell* v. *People,* 107 Ill. 372.) *Third,* the act is said to be in violation of section 23 of article 3 of the constitution of 1848, a portion of which section is in the following words: "No private or local law, which may be passed by the General Assembly, shall embrace more than one subject, and that shall be expressed in the title."

It is not necessary to express any opinion as to the first and second grounds, upon which the constitutionality of the law is attacked. It is clearly unconstitutional upon the third ground, urged against it. It violates section 23 of article 3, as above quoted. It is a local law. It applies to Wayne county and no other county in the State. It embraces a subject, which is not expressed in its title. It is entitled "An act to change the time of electing certain officers in a county therein named." It does not change the time of electing any officers. It abolishes the office of supervisor of the town, and provides that the duties of town supervisors shall be performed by justices

of the peace. It creates certain new electoral districts, and provides for the election of members of the board of supervisors, as such. No such official, as a member of the board of supervisors, had theretofore been elected, as such, by the people. Each town supervisor, when meeting with the supervisors of all the other towns in the county, was called a member of the board of supervisors. The five members of the new board were to be elected once in four years, instead of being elected annually. They were, however, new officials, created for the first time by this act. They were not town supervisors, but district supervisors. It is apparent from the most superficial examination, that the title furnishes no information of the subjects, which are embraced in the body of the law. The view, here expressed, is sustained by the following cases: *People* v. *Mellen,* 32 Ill. 181; *People* v. *Institution of Protestant Deaconesses,* 71 id. 229; *Village of Lockport* v. *Gaylord,* 61 id. 276; *Middleport* v. *Ætna Life Ins. Co.* 82 id. 562; *Welch* v. *Post,* 99 id. 471.

It is, however, urged, that the five district supervisors, who issued the bonds in question, were officers *de facto,* and that their acts, as such *de facto* officers, are valid and binding, so far as the rights of third persons are concerned. I do not think, that this position is tenable under the facts of this case. There are some authorities, which hold, that an act of the legislature, even if it be unconstitutional, is sufficient to give color of title, and that an officer, acting under it, is an officer *de facto.* But the cases, which lay down this doctrine, will be found, upon a careful analysis, to refer not to the unconstitutionality of the act creating the office; but to the unconstitutionality of the act, by which the officer is appointed to an office legally existing. Such cases apply only to the invalidity, irregularity or unconstitutionality of the mode, by which a party is appointed or elected to a legally existing office. Where an office has been lawfully created, the acts of an incumbent, who holds it improperly, will be considered valid, as being the

acts of an officer *de facto*. But there can not be an officer *de facto*, where no officer *de jure* is provided for. Before one can claim to be a *de facto* officer of the law, there must be a law creating the office. The office itself must be one *de jure;* the officer may, then, be one *de facto*. There can be no officer either *de jure* or *de facto*, if there be no office to fill. (*Norton* v. *Shelby County*, 118 U. S. 425; *Town of Deborah* v. *Bullis*, 25 Iowa, 12; Wait's Actions and Defences, sec. 9). Dillon in his work on Municipal Corporations (3d ed.) sec. 276, says : "The notion, that there can be a *de facto* office has been characterized as a political solecism, without foundation in reason and without support in law; and, therefore, a person can not claim to be a *de facto* officer of a municipal corporation, when the corporation or people have, in law, no power, in any event, to elect or appoint such an officer."

It can not be said of the act of February 28, 1867, that it merely prescribed a new mode of selecting the members of the board of supervisors of Wayne county. It endeavored to form a new board of supervisors, unknown to the Township law, under which Wayne county was organized, and opposed to the spirit and theory of that law. In the place of a board, consisting of fifteen town officers, elected by the fifteen towns of the county, eight of whom constituted a legal quorum, it provided for the organization of a board of five men, elected by five newly created electoral districts, and three of whom constituted a legal quorum. It is apparent from the observations already made, that this act sought to inaugurate a new system of government for Wayne county. It made provision for a set of officials, who, though they were called by the same name as the old board, were yet, in fact, an entirely new governing body.

It follows, that the five men, who issued the bonds under consideration, were not incumbents of offices, already legally existing, and can not be regarded as *de facto* officers. As the act, which attempted to create the board of five district super-

visors, never became a law, that board never really came into existence. The Supreme Court of the United States say: "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Norton* v. *Shelby County, supra.*

It is further claimed, that the issuance of the bonds, involved in this suit, has been ratified by the legislature in the passage of an act, approved February 24, 1869, and entitled, "An act to amend an act entitled an act to incorporate the Illinois Southeastern Railway Company." (3 Private Laws, p. 308.) The first section of this act provides, that "all subscriptions to the capital stock, or donations, or gifts to said railway company, whether made by individuals, townships, counties or corporations, shall be and are by this act legalized; and the said company is hereby empowered and authorized to collect and use the same upon the conditions as donated and subscribed."

Clearly this first section of the act of 1869 is unconstitutional, as being in violation of section 23 of article 3 of the constitution of 1848, as above quoted. This court said of it in *Welch* v. *Post, supra:* "The question is directly made, that the amendatory act of 1869 violates the constitution of 1848, article 3, section 23. * * * On the authority of *Middleport* v. *Ætna Life Ins. Co.* 82 Ill. 562, we are inclined to hold the point is well taken, and, if so, it would be conclusive of the whole case." In *Village of Lockport* v. *Gaylord, supra,* the act under consideration was an act of the legislature, entitled "An act to amend the charter of the village of Lockport, passed February 12, A. D. 1853," the 6th section of which was as follows: "That the appropriations made by the president and trustees, and orders, drawn by the clerk in February, 1867, be, and the same are, hereby fully legalized in all respects." It was there said: "The legalization of unauthorized acts of the corporation can not be considered to

be amendatory of its charter.  *  *  *  The object of the 6th section is not expressed in the title of the act, and we must hold, that it was passed in violation of the constitution, and is, therefore, void."

There is no difference between the act, which came under review in *Village of Lockport* v. *Gaylord*, and the act of 1869, now under consideration. The latter act, in its title, purports to amend the charter of the Illinois Southeastern Railway Company. The first section attempts to legalize unauthorized donations and subscriptions. Such legalization is not amendatory of the charter. The object of the first section is not, therefore, expressed in the title of the act. Hence, it must be held to have been passed in violation of the constitution, and is void. Being thus unconstitutional and void, it can not be regarded as a ratification of the illegal acts of the board of supervisors, created by the act of February 28, 1867.

For the reasons here stated I think the judgment of the county court should be reversed.

Mr. Justice Scholfield : I concur in the foregoing views of Mr. Justice Magruder.

Mr. Justice Mulkey: I fully concur in the dissenting opinion of Mr. Justice Magruder.