THE HAMBURG AMERICAN PACKET COMPANY
VS.
REGINA GATTMAN.

*Carriers—Failure to Deliver Goods—Action for Damages—Liability—
Termination of—Seizure by Customs Officers—Damages—Whether Ex-
cessive.*

In an action against a steamship company to recover damages for the fail-
ure of the defendant to carry a certain box of goods from Hamburg to New
York and deliver the same to the plaintiff, it is *held:* That it was the duty
of the defendant to deliver the goods at New York to the plaintiff; that its
liability as a common carrier continued for a reasonable time to enable the
plaintiff to claim and take possession of her goods; that there was no want
of diligence on her part; that upon the defendant's theory of the facts the
seizure by the customs officers resulted from the wrongful act of a mere
intruder before the termination of the defendant's liability as a common
carrier; that this court can not set aside the verdict as excessive. the evi-
dence being conflicting and two juries having reached substantially the same
result.

[Opinion filed December 14, 1887.]

APPEAL from the Circuit Court of Cook County; the Hon.
JOHN G. ROGERS, Judge, presiding.

Messrs. MOSES & NEWMAN, for appellant.

Messrs. BYAM, PARKHURST & WEINSCHENK, for appellee.

BAILEY, J.    This was an action on the case, brought by
Regina Gattman against the Hamburg American Packet Com-
pany, to recover damages for the failure of said company to
carry a certain box of goods belonging to the plaintiff from
Hamburg, Germany, to the City of New York, and deliver
the same to the plaintiff at New York, whereby said goods
became lost to the plaintiff. The declaration consists of four
counts, three of which allege the delivery of said goods by
the plaintiff to the defendant to be carried and delivered

Hamburg Am. Packet Co. v. Gattman.

as aforesaid for certain reward, the failure of the defendant to so carry and deliver the same, and the consequent loss of said goods, the other count being an ordinary count in trover. The trial before the court and a jury resulted in a verdict in favor of the plaintiff for $1,604.30, and for that sum and costs the plaintiff had judgment.

In the early part of February, 1883, the plaintiff, being about to emigrate from Buda Pesth, Hungary, her former place of residence, to the United States, packed such goods as she desired to take with her in nine boxes, numbering them consecutively from 1 to 9, and forwarded to the defendant at Hamburg to be shipped to New York. The plaintiff arrived at Hamburg and sailed February 14, 1883, as a steerage passenger on the defendant's steamship Wieland, bound for New York. But four of her boxes, viz., those numbered from 1 to 4, arrived at Hamburg in time to be shipped by the Wieland, the other five being shipped a few days later by the defendant's steamship Hammonia. All of said boxes arrived in New York and were there ultimately delivered to the plaintiff except box number 1.

The plaintiff was accompanied by her daughter Clara Phillipsborn and two children, her son Henry and two other young women, all of whom came with her from Buda Pesth. It appears that the Wieland landed at Hoboken, and that the steerage passengers, including the plaintiff and her party, together with their baggage and effects, were there placed on a steam barge and taken over to Castle Garden, New York. The plaintiff was met at Hoboken by Maximillian Phillipsborn, her son-in-law, who, as it seems, had immigrated to the United States two or three years previously. Phillipsborn went on board the steamship as it reached the wharf, and after assisting the plaintiff in getting together her hand-baggage, undertook to search for her boxes. The evidence shows that he searched both on shipboard and among the baggage landed at Hoboken but failed to find them. He then inquired of one of the defendant's employes in attendance, who suggested that possibly the boxes would come by another ship, but assured him that they would be all right and would soon be along, and that the

plaintiff would get them.    On reaching Castle Garden he again inquired of the defendant's agent and received substantially the same response.    The next day he went to the defendant's freight office in New York and inquired for and described the boxes and was again met by the same assurance that they would come all right.    Upon his insisting that he could not afford the expense of remaining in New York to await their arrival and that he must have them at once, he was referred to another party to whom he again gave an explanation of the matter and who told him to go back to Hoboken, assuring him that he would find the boxes there.    He accordingly returned to Hoboken and applied to the defendant's freight agent and was directed by him to look all around and see whether he could find them.    He thereupon made thorough search, but the search proving fruitless, he was told to go again to Castle Garden as his boxes might be there.    He then returned to Castle Garden and made a thorough search there but with like result.    He then went to the defendant's office and demanded the boxes of the defendant's manager, telling him that he could not remain longer in New York, and that he wished to take the boxes with him on his journey to Chicago; that he had a given number of railroad tickets for the party, upon each of which he was entitled to free transportation of 150 pounds of baggage.    The manager then told him that if they would go west by the Erie railroad, he would ship the boxes later by that road, and arrange for their transportation the same as though taken along with the party, but as Phillipsborn had already procured tickets by the Pennsylvania railroad, this arrangement could not be made.    The party, however, remained in New York another day, and on that day Phillipsborn again made search and inquiry for the boxes both at Hoboken and at Castle Garden, but entirely failed to get any trace of them.    The plaintiff thereupon left an order for their delivery, when found, to Rothfield, Stern & Company of New York, and came on with her party to Chicago.    Subsequently three of the four boxes shipped by the Wieland and the five boxes shipped by the Hammonia were delivered by the defendant to Rothfield, Stern & Co. and were forwarded by them to her.    Box number 1 was never delivered.

There is considerable conflict in the evidence in relation to the marks or directions placed by the plaintiff on the missing box before it was shipped, the defendant's evidence tending to show that it was marked and directed to a Mr. Rothgerber of Chicago, and that the plaintiff's name was not on it, while the plaintiff and several of her witnesses testified that all her boxes were marked with the name of Regina Gattman, in care of Rothgerber, Chicago, before they were shipped from Hamburg.

The defendant gave evidence showing that, by the rules and usages of the custom-house, the baggage of the steerage passengers arriving at New York was examined by the custom-house officers on the deck of the ship or at the wharf; that it was the duty of the passengers claiming the baggage to open it and allow an officer to examine it, and if nothing dutiable was found in it, it was taken to the general baggage room of the commissioners of emigration at Castle Garden for registration, and then delivered to the owner; that whenever dutiable articles were found, the inspector making the examination marked the packages containing such articles and attached thereto checks labeled "U. S. Customs," and bearing numbers, at the same time giving duplicate checks to the owner, and sent the packages to the bureau of customs at Castle Garden for the determination and collection of the duties; that if the owner, for any reason, declined or neglected to open the baggage, or if no owner appeared, the baggage was seized and sent to the bureau of customs, and when no owner presented himself to receive the duplicate check, both the check and duplicate were attached to the baggage; that such baggage was under the control of the surveyor of the port from the time of its examination on deck or at the wharf to the time of its delivery at said bureau, and that it there passed into the charge and under the control of the officers of the custom-house, and so remained until it was determined who was entitled to it and the duty was paid or it was released from duty and that the steamship company had no further control over it, and had no right to interfere, unless acting as the representative of the owner and by his authority. Unclaimed immigrants' baggage was placed in a public store-room connected

with said bureau, and was there kept in charge of the custom-house officers for at least one year, and the packages were then opened and the contents appraised by said officers, who afterward disposed of them by sale at public auction.

The defendant gave evidence tending to show that all the baggage on board the Wieland was discharged on the day of her arrival; that after the passengers had left, one of the defendant's agents, whose duty it was to look after " left baggage," found three boxes on the dock marked Rothgerber, but having no mark or number indicating that they belonged to the plaintiff, and put them into the baggage room and locked them up, and that said boxes appeared at the time to have been opened. The defendant also gave evidence tending to show that, while the baggage discharged from the Wieland was being examined, an emigrant runner named Baschkopf called the attention of one of the inspectors making the examination to two boxes lying on the wharf, and endeavored to bribe him to pass them without examination, and on being asked who owned them, said that they belonged "to a girl over there;" that the inspector declined the proffered bribe and told Baschkopf to open the boxes, and upon his neglecting to do so, the inspector marked them " P. S." (meaning public stores), with the number of his badge, and, after attaching a brass check to each, put them on the barge and conveyed them to Castle Garden and delivered them to the superintendent of the bureau of customs. Whether the duplicate checks were also attached to said boxes does not clearly appear. The number on the check attached to one of said boxes was 23, and it appears by the entries made at the time in a book kept by said bureau, that the box bearing that check was marked Rothgerber, and that the number 287 was placed on it by the revenue officers on its arrival at said bureau, that being its serial number in the order of its arrival. The evidence tends to show that said box was then placed in a store-room or ware-house connected with said bureau, to which no person had access except the revenue officers, and that it was kept there for over a year; that the various packages of unclaimed goods which had remained in said warehouse for that length of time were then opened, catalogued and appraised by said officers, and that one of the

Hamburg Am. Packet Co. v. Gattman.

packages appearing on said catalogue was described as being marked with the name of Rothgerber; that two days prior to the day fixed for the sale of the unclaimed goods, said boxes and contents were placed on exhibition under the custody and guard of said officers, and that on the day appointed said boxes were sold, one Lee becoming the purchaser of the box marked Rothgerber.    During the pendency of this suit the defendant traced said box into the hands of said Lee, and thereupon obtained from him a box, in a mutilated condition, which, as he claimed, is the box in question, and also the contents or a portion of the contents of said box.    The box and contents were produced at the trial, and while a portion of the contents were admitted by the plaintiff to be her goods, she denied that the residue belonged to her, and her evidence tended to show that the box produced was not the box number 1, in which she shipped her goods from Hamburg.

The legal duty of the defendant as a common carrier of goods was to carry the goods in question from Hamburg to New York and there deliver them to the plaintiff.    It seems to be the general rule that common carriers are under obligation to make personal delivery to the consignee.    Schouler on Bailments and Carriers, 504.    This rule is relaxed in case of carriers by water, since it is customary for them to carry merely from port to port or from wharf to wharf and for the owner or consignee to receive the goods at the wharf upon the arrival of the vessel, and it is accordingly held that a delivery upon the wharf is sufficient.    But it is of the essence of the rule that due and reasonable notice should be given to the owner or consignee, so as to afford him a fair opportunity for providing suitable means to take care of and carry away the goods.    Angell on Carriers, Sec. 313, and authorities cited. See also Crawford v. Clark, 15 Ill. 561; Union S. S. Co. v. Knapp, 73 Ill. 506.    It clearly follows from this rule that the liability of the carrier continues until a reasonable opportunity is given the owner or consignee to receive and take possession of the goods.

We are of the opinion that the circumstances of the present case relieved the defendant from the duty of notifying the plaintiff of the arrival of her goods.    She was a passenger by

the same steamship by which she had shipped the goods, and she must of course be charged with notice of the arrival of both the vessel and cargo. But although the plaintiff knew that her goods had arrived, she was entitled to a reasonable time to claim and take possession of them, and, until that time had elapsed, the defendant's liability as common carrier continued, and such liability imposed upon the defendant the duty of protecting the goods from the interference of intruders or persons not entitled to their possession.

There seems to have been no want of diligence on the plaintiff's part in endeavoring to find and take possession of her goods. Phillipsborn testifies, and in this respect. his evidence is uncontradicted, that very soon after the arrival of the vessel at Hoboken, he, as the plaintiff's agent, made search for her goods both on shipboard and among all the goods on the wharf. He also inquired for them of one of the defendant's employes there present, but failed to find them. Where they were at the time this search was made does not clearly appear. That they were not then in such place on the wharf that the plaintiff or her agent could find them by the use of reasonable diligence may be fairly inferred.

If we should assume the truthfulness and accuracy of the evidence by which the defendant attempts to account for the missing box, it would appear that Baschkopf. a person with whom the plaintiff is not shown to have been in any way connected, and who must, therefore, be deemed to have been a mere intruder, took possession of said box and another box with which the plaintiff had no concern, claiming to be acting on behalf of some person whose identity is not proved, and attempted to bribe the revenue officer to pass said boxes—that is, to mark them as having been found on examination to contain no articles subject to duty, and that said officer, assuming that he was the proper representative of the owner, asked him to open the boxes, and upon his refusal seized them and delivered them to the officers of the custom house. From the time of the seizure, as must be admitted, the box was in the possession of the revenue officers of the government and the defendant had no further control over it.

Hamburg Am. Packet Co. v. Gattman.

The jury may very probably have inferred that the seizure took place before Phillipsborn, in his search, reached the place where the defendant had deposited the box on discharging it from the vessel, for otherwise he most likely would have found it. But, however this may be, it is clear that the seizure resulted from the wrongful act of a mere intruder, and the evidence warrants the conclusion that it took place before the plaintiff had a reasonable opportunity to find and take possession of the box, and, therefore, before the defendant's liability as a common carrier terminated. The fact that the power of the government officers to make the seizure was plenary, and was a power which the defendant could neither question nor resist, is not material so long as the exercise of that power was evoked by the wrongful act of an intruder against whom the defendant was bound by its duty as a common carrier to protect the property. It is not claimed that the box contained any articles subject to duty, nor does it appear that any duties were ever imposed upon them by the custom house officers. It may therefore be presumed that if the box had come into the possession of the plaintiff or her agent, it would have been properly submitted to the inspection of the revenue officers, and that it would have been by them discharged from the payment of duties and returned to the possession of the plaintiff. We are of the opinion then, that, even upon the defendant's theory of the facts, there was never a legal delivery of the box by the defendant to the plaintiff, and accordingly that the defendant is liable to the plaintiff for its value.

But it is by no means established that the account given by the defendant's witnesses of the seizure and subsequent history of the box is a true one. Their evidence traces the box which was seized into the hands of Lee, a purchaser at a sale by the revenue officers of unclaimed baggage, and the box thus purchased, or so much of it as had not been destroyed, was produced at the trial. The evidence offered by the defendant as to the identity of the box produced with the one lost by the plaintiff is far from being conclusive, while the testimony of the plaintiff and her witnesses tends to show that it was not the plaintiff's box. If the box purchased by Lee was not the one lost by the

plaintiff, very grave doubt is thrown upon the entire chain of evidence by which the defendant attempts to trace the history of the box from the time of its disappearance to the time of the sale of unclaimed baggage.

The point is made and very strenuously urged that the damages awarded by the jury are excessive. The evidence as to the amount and value of the goods contained in the missing box is conflicting. The plaintiff testified as to their amount, description and value, and her testimony, if believed, is sufficient to warrant the damages recovered. Her evidence is corroborated by that of her son and one of the young women who came to this country with her, who testified that they saw her pack the box, and that the articles to which she testified were put in it. She is also corroborated in some measure by her son-in-law, Phillipsborn, who testified that he knew of her being the owner of most of the goods which she claims to have put into the box. On the other hand, but a small portion of said goods, and those the least valuable, were found among the goods which, according to Lee's testimony, were in the box bought by him at the sale of unclaimed baggage. Various other circumstances appear in evidence, but which it would serve no useful purpose for us to specify in detail, which tend to throw discredit upon the plaintiff's evidence as to the damages. After carefully considering all the evidence, however, and after taking into account the ordinary disposition of plaintiffs in cases of this character to magnify the amount of their loss, we are unable to say that the jury have misconstrued the evidence, or that they have given undue weight to the evidence introduced by the plaintiff. The case has been tried once before with substantially the same result as to damages, and after the concurring verdict of two juries upon evidence thus conflicting, this court should be very reluctant to set aside the verdict as being against the preponderance of the evidence.

Various exceptions were taken by the defendant to the ruling of the court in the instructions to the jury. We have examined the instructions and are of the opinion that they stated the law with substantial accuracy, and that there was no material error in that respect.

We find none of the assignments of error sustained, and the judgment will, therefore, be affirmed.

*Judgment affirmed.*

UPON REHEARING.

[Opinion filed August 1, 1888.]

*Per Curiam.* A rehearing having been granted in this case, we have carefully reviewed the evidence and the instructions of the court to the jury in all the light shed upon both by the very earnest and able oral and printed arguments delivered and presented by the appellant's counsel.

The instructions, it seems to us, directed the jury with all reasonable accuracy and precision as to every point in issue upon the trial. Those refused were erroneous.

The evidence on behalf of the plaintiff below tended to prove every necessary element of a cause of action, and to support the verdict even as to the amount of damages.

There was, it is true, a conflict of evidence as to some of the facts essential to a recovery, and as to the question of damages. But the record fails to show a case where the verdict is wholly unsupported by evidence as to any one essential fact, or where it is manifestly against the weight and preponderance of the evidence, or where the verdict is apparently the result of passion or prejudice upon the part of the jury, some one of which is necessary in order to justify this court in granting a new trial within the established rules governing in such cases.

After two examinations of the evidence in this case, we are satisfied it shows a cause of action against the defendant below as a common carrier. The defendant received a case of plaintiff's goods at Hamburg to be carried to the port of New York, and there safely delivered to the defendant; at that port upon the arrival of the ship carrying the goods, the plaintiff caused a seasonable and proper demand to be made upon the defendant for the goods, and the defendant failed to deliver them or inform plaintiff where they were. They were lost. That made out a cause of action and the defendant failed to show

any legal justification in the premises.    We may suspect that
the evidence was strained so as to enlarge quantity and magnify
as to quality and value of the goods, but we can not, under the
evidence, demonstrate that what we suspect is fact.    Upon the
opinion heretofore delivered by Mr. Justice Bailey, it is the
judgment of a majority of the court, that the judgment below
should be affirmed.              .              *Judgment affirmed.*