ÆTNA LIFE INS. CO. *v.* TOWN OF MIDDLEPORT and others.

(*Circuit Court, N. D. Illinois.* July 5, 1887.)

LIMITATION OF ACTIONS—PROMISE NOT IN WRITING—APPROPRIATION IN AID OF RAILROAD.

In an action against a town to recover the amount of certain bonds issued by its supervisor and town clerk, it appeared that the town was authorized by statute to appropriate money and levy a tax to aid in the construction of a railroad, upon the vote of a majority of the legal voters in favor of the measure; that it appropriated a subsidy by a legal vote; that, when the subsidy fell due on completion of the railroad, the supervisor and town clerk executed bonds to the railroad company for the amount of the appropriation, which bonds were assigned by the railroad to plaintiff. The supreme court, in the case of *Middleport* v. *Ætna Life Ins. Co.*, 82 Ill. 562, held these bonds void as being unauthorized by the statute authorizing the appropriation, and plaintiff brought action to recover the appropriation. *Held*, that plaintiff's claim being based on no written contract, was barred by section 2 of Illinois act of November, 1849, amending the law concerning the limitation of actions, (Purple, St. Ill. 731,)which limits actions on accounts or promises not in writing to five years, and neither the record of the vote of the subsidy, nor the issuance of the invalid bonds by the town officers, made a written contract with the railroad company which would take the case out of the statute.

*Bailey & Sedgwick*, for complainant.
*Dewitt C. Jones*, for defendant.

BLODGETT, J. This bill charges, in substance, that at an election of the legal voters of the defendant town, held on the eighth day of June, 1867, it was voted "to appropriate the sum of $15,000 to aid in the construction of the Chicago, Danville & Vincennes Railroad, such election being held and appropriation made in pursuance of an act of the general assembly of the state of Illinois approved March 7, 1867, entitled "An act to authorize towns, cities, or townships lying within certain limits to appropriate money and levy a tax to aid in the construction of the Chicago, Danville & Vincennes Railroad;" that, by said act, said legal voters were empowered to bind the defendant town for the payment of the sum so

appropriated as soon as said railroad should be laid out and constructed through the said town, and did so bind the town by said vote; that the railroad company duly accepted the conditions of said appropriation, and laid out, constructed, and completed its track through said town on the faith of such appropriation; that the railroad was so completed, on or before the twenty-fourth day of March, 1871, and the appropriation of said aid in the construction thereof became and was due and payable on said day, and that afterwards, and on the 24th day of March, 1871, the supervisor and town clerk of the defendant town, for the purpose of paying such appropriation, executed and delivered to said railroad company 15 bonds for the sum of $1,000 each, dated on the last-mentioned day, bearing interest at the rate of 8 per cent. per annum, payable on the first day of June in each year,—the principal sum of three of said bonds being payable June 1, 1876; three, June 1, 1877; three, June 1, 1878; four, June 1, 1879; and two, June 1, 1880; and that during the month of June, 1871, the complainant, without notice of any want of power in the town to issue the same, purchased the said 15 bonds from the said railroad company, and paid therefor the sum of $14,700, and said bonds were delivered to complainant, and complainant has ever since been the holder and owner thereof, in good faith, for value so paid; that by said purchase and acquirement of said bonds from the railroad company, complainant became in all respects the equitable assignee of the sum so appropriated by the town to aid in the construction of said railroad; that after the issue of said bonds, and the purchase thereof by complainant, the defendant town paid all the interest thereon as the same fell due, according to the tenor of the bonds, up to and including the interest due July 1, 1876; that about the twentieth day of June, 1876, the defendant town filed its bill upon the equity side of the circuit court of Iroquois county, in which county said town is situated, against the complainant, as holders of the bond in question, and divers other persons whom it is not material here to mention; charging that such bonds were made and delivered without authority of law, and were void; and praying the court to so decree, and to enjoin complainant from collecting said bonds; and that such proceedings were had in said cause; that on the twelfth day of September, 1876, the supreme court of Illinois adjudged that said bonds were void as issued without authority of law; whereupon said circuit court, passed and entered a decree in conformity with the judgment of the supreme court, adjudging the bonds void, and enjoining the complainant from collecting the same; which judgment and decree has ever since remained, and is now, in full force.

It is further charged that the adjudication as to the validity of the bonds proceeded solely on the ground of want of power to issue them in payment of the appropriation voted to aid in the construction of said railroad by the voters of the town, but did not hold or adjudge that the appropriation so voted was not valid and binding on the town; that no part of the principal sum of said appropriation has ever been paid by the defendant town; and that, by reason of the premises, the said appropriation is now due and payable to the complainant, as the equitable

assignee thereof from said railroad company; wherefore a decree is prayed subrogating the complainant to all the rights of the railroad company, and directing that the town proceed without delay to levy and collect a tax sufficient to pay such appropriation, and that the same be paid to the complainant.

To this bill the defendant town opposes a demurrer on the ground: (1) that the bill is without equity; (2) that it is multifarious; (3) that all right of action was barred by the statute of Illinois in five years from the time appropriation became payable; (4) that the right of action is so barred by the statute of Illinois in 10 years from the time the appropriation became due; (5) that the complainant has been guilty of such laches as to defeat this suit, even if a right of action had ever existed in favor of complainant.

I do not deem it necessary to discuss all the points made on the demurrer, as it seems to me, if the defense of the statute of limitations is good, no other defense need be considered.

The rule is undoubtedly well established in the federal courts that the defense of the statute of limitations or of laches, if it appears clearly on the face of the bill, may be taken advantage of by demurrer. Judge Story says: "A court of equity will not entertain a suit for relief if it would be barred by law." Story, Eq. Pl. § 503; *Maxwell* v. *Kennedy*, 8 How. 218; *Badger* v. *Badger*, 2 Wall. 87.

Here complainant seeks to be subrogated to the rights of the railroad company, and, if the rights of the railroad company are barred, then those of the complainant, as equitable assignee, must also be barred. The dealings between the complainant and the railroad company, by which the complainant claims to have become the equitable assignee of the appropriation voted by the town to the railroad company, does not change the nature of the obligation of the town. If it was originally a demand which could only have been enforced by a suit at law, its character in that regard is not so changed as to defeat any legal defense which the town could have against the railroad company. It is emphatically a case where equity will follow the law, because the only ground for equitable cognizance is the alleged equitable transfer to the complainant of the right to this appropriation which entitles the complainant to be subrogated to the rights of the railroad company; and, if that right should be decreed, a court of equity, having taken jurisdiction for the purpose of subrogation, may, in its discretion, retain it to do complete justice between the parties.

So much of the act of March 7, 1867, under which this liability was incurred by the defendant town, reads as follows:

"Section 1. That all incorporated towns and cities, and towns acting under the township organization law, which lie wholly or partly within twenty miles of the east line of this state, and also between the city of Chicago and the southern boundary of Lawrence county, be, and the same are hereby, severally authorized to appropriate such sum of money as they may deem proper to the Chicago, Danville & Vincennes Railroad Company, to aid in the construction of the road of said company, to be paid to said company as soon as the track of said road shall have been located and constructed through said

city, town, or township respectively: provided, however, that the proposition to appropriate moneys to said company shall be first submitted to a vote of the legal voters of said respective townships, towns, or cities, at a regular annual or special meeting, by giving at least ten days' notice thereof; and a vote shall be taken thereon by a ballot at the usual place of election; and, if the majority of votes cast shall be in favor of the appropriation, then the same shall be made; otherwise not.

"Sec. 2. The authorities of said townships, towns, or cities, respectively, are hereby authorized and required to levy and collect a tax, and make such provisions as may be necessary and proper for the prompt payment of the appropriation under the provisions of this law."

In the case referred to in the bill, where the bonds in question were adjudged void by the supreme court of this state, (*Middleport* v. *Ætna Life Ins. Co.,* 82 Ill. 562,) the supreme court of Illinois says:

"All these bonds recite upon their face the several acts of the legislature under which they were issued, and that they were issued in accordance with a vote of the electors of the township at an election on the eighth day of June, 1867. The present holders of the bonds are chargeable, therefore, with notice of the fact whether there was any authority at law for issuing such bonds. Under the decisions of this court, if there was a total want of authority in the municipal officers to issue such bonds, they are void, no matter if they came into the hands of the present holders for full value paid. * * * This brings us to the important inquiry, what authority had the officers, assuming to act on behalf of the town of Middleport, to issue the bonds which are the subject of this litigation? Clearly they derived no authority whatever from the act of March, 1867, under which the election as to the propriety of making the appropriation to the railroad company was held. That act did not purport to give either the township or its officers power to borrow money, or to issue bonds in payment of any appropriation that might be voted by the legal voters of the town to the railroad company. Such appropriations or donations were to be paid by a tax, which it was made the duty of the corporate authorities to levy and collect. Where one mode of payment of municipal indebtedness is fixed by statute, by implication it excludes all others. The electors gave their consent to the statutory mode of paying the appropriation voted, viz., by taxation, and none other; and the corporate authorities of the town were not at liberty to adopt any other mode. * * * The electors of the township under the act of March 7, 1867, had voted a sum of money as an appropriation or donation to the railroad company to be paid by taxation, and in no other way. They never gave their consent to any other mode of payment. * * * Payment of interest for a series of years upon donations voted, or discount to make the donations equal to ready money in the market, was a burden the people of the township had never assumed, and no power existed anywhere to impose it upon them without their consent."

If I rightly construe this opinion, it holds that neither the railroad company nor the complainant acquired any right against the town by the issue of these bonds; and the right of the railroad company to be paid the appropriation is in no way affected by this void act of its officers in issuing these bonds. It follows, then, I think, that from the most favorable view which can be taken in favor of the complainant, this case must be considered precisely the same as if the railroad company had, in the month of June, 1871, assigned to the complainant all its rights to this donation, and it may, for the purposes of this demurrer, be considered that the railroad was then completed through the town, so that the

appropriation voted was then due and payable, and an action might have been maintained therefor. There was no agreement in writing between the town and the railroad company for the payment of this appropriation. The vote of the electors clothed the proper officers of the town with authority to pay this sum to aid in the construction of this railroad; and made it the duty of the officers of the town to levy and collect a tax sufficient to secure its prompt payment; and, as the law made the appropriation payable "as soon as the railroad shall have been located and constructed through the town," it is probable the law would imply a promise on the part of the town to pay when the road was so completed; and the right then accrued to the railroad company to sue for and collect this appropriation,—thus clearly bringing the case within the second section of the act of November, 1849, entitled "An act to amend the law concerning the limitation of actions," (Purple, St. Ill. 731,) which limits all actions founded upon accounts, bills of exchange, orders, or promises not in writing, express or implied, to five years after the cause of action shall have accrued. There was here no agreement in writing to pay this money; but the voters of the town, acting under the authority of this statute, delegated to their proper officers the authority to pay it; and we may say it became under the law the duty of these officers to levy and collect a tax and pay the money when the road was completed through the town. The time of payment, or whether the sum so appropriated should become due and payble, was wholly uncertain, and rested upon the contingency as to when, if ever, the railroad should be so constructed through the town,—thus leaving the time when the payment should be due, if it ever became due, to be determined wholly by outside proof. What was done by the voters at their election, although entered upon the town records, does not make a contract in writing with the railroad company or any other person for the payment of this money; but the law may perhaps be said to imply an obligation to pay this money from the vote of the electors, and the completion of the road. The voters made and recorded their own will in their own record-book, and the law said that this direction of the will of the voters should be carried into effect when the road was completed. It therefore seems to me that the act of the town officers in issuing the bonds cannot be allowed to extend or affect the running of this statute. It must have commenced to run, according to the spirit and teachings of the opinion of the supreme court from which I have quoted, as soon as the railroad company had a right of action against the town; and being only a right of action resting on parol, or which the law would imply from certain acts, and not from an agreement in writing, it must be controlled and limited by the second section of the act of 1849, to which I have referred.

I am therefore of the opinion that any right to which the complainant could be subrogated under this bill is barred by the statute of limitations; that is, if the complainant was by the decree of this court to be placed to-day in the shoes of the railroad company, and to be held to be the assignee of all the rights of action of the railroad company, such

right of action would be barred by the statute to which I have referred.

The demurrer to the bill is therefore sustained, and the bill dismissed for want of equity.