Bradbury, J.
At the September term of the court of common pleas of Summit county, Omar N. Gardner was indicted for offering a bribe to *30 Joseph. Hugi.ll, a city commissioner of the city of Akron. The accused demurred to the indictment on the ground that the act of April 20, 1893, under which Hugill was performing the duties of his office, was unconstitutional and void. The demurrer was sustained and the defendant discharged. To this holding of the court the prosecuting attorney excepted, and, by virtue of the provisionsof sections 7305,7306,7307and 7308 of the Revised Statutes, has brought the question to this court for review. Two questions are presented by the record: 1. Whether the act of April 20, 1893, which provides a municipal government for the city of Akron, is unconstitutional or not, and 2, if unconstitutional whether its constitutionality may be assailed in the collateral way, undertaken by the accused. The first question which logically arises, is the latter of the two; for if the accused should not be allowed to raise the question, in the way he attempted, it follows that the constitutionality of the act which created the office was not before the court. Whether an act of the general assembly creating an office and providing a method .for filling it may be collaterally attacked, is a question of the utmost importance in the practical administration of governmental affairs. Different courts have decided the question differently. Leach v. The People, 122 Ill., 420; Burts v. Winona & St. P. R. Co., 18 N. W. Rep., 285; Coyle v. Commonwealth, 104 Pa. St., 117; Mechem on Public Officers, sections 318, 327; Van Fleet on Collateral Attack, section 21, page 33; Norton v. Shelby County, 118 U. S., 425; Hildreth v. McIntire, 1. J. J. Marsh, 206.
It is now before this court for the first time, and while we are not insensible to the consideration *31 justly due to the high standing of those courts and authors, we are bound to reach that conclusion which, in our judgment, is best sustained by sound reason; and that best comports with an enlightened public policy and the maintenance of public order.
If the official acts of officers, acting in an office created by an unconstitutional statute, should be regarded as falling within the principle that sustains the act of de facto officers, until the statute has been held unconstitutional by competent judicial authority in a proceeding appropriate'to that end, all difficulty vanishes. The opposite doctrine is based upon the assertion that there can be no defacto officer unless there is a de jure office. That is a simple and summary way to dispose of this grave question. That there can be no de jure officer without a de jure office is a proposition to which all minds will, of course, assent. But that there can be a de facto officer without a de jibre .office, is disputable, if the phrase “defacto officer” includes one who in fact discharges the duties of a public office, recognized by the great body of the people and by virtue of a statute solemnly passed by the general assembly of the state, which may be unconstitutional. That there have been many officers who occupied and discharged the duties of offices created by laws that were afterwards held unconstitutional is a fact well known to every one. While in such occupancy innumerable official acts, affecting both public and private rights, may have been actually performed by them; the duration of the office may, and often does, extend through a series of years. In the ease before us the act in question is one creating a municipal government for the city of Akron, and has been in force since *32 its enactment in April, 1893; it superseded an act passed in the year 1891 for the government of that city, which latter act was subject to the same assault that was attempted to be made on the one under consideration. The existing government of the populous and thriving city of Youngstown, also rests upon the act now assailed. "While that of the city of Springfield depends upon air act, at least as vulnerable to the same attack, as the act under consideration. The constitutionality of the governments of the cities of Springfield and Young-stown have not been assailed, even collaterally, and may continue unchallenged for many years. The officers who in- these cities occupy offices created by the acts upon which the city government rests, are daily discharging duties affecting the rights of the city, and the private rights of individuals. These officers are either usurpers and trespassers, or de facto officers; if the latter, the rights of public, or of individuals who have submitted to their authority, or acquiesced in its exercise, would be unaffected by a subsequept authoritative judicial declaration that the statute was unconstitutional; if they were usurpers merely, every official act would be a nullity, and interminable confusion possibly follow such a decision. Were such results to follow, the courts might well pause, before declaring unconstitutional an act establishing a city government, unless its constitutionality was challenged upon the threshold of its existence.
The common, law in relation to defacto officers had its origin in England; it was there laid upon a foundation as broad as their necessities required. Such a thing as a written constitution controlling-legislative action was unknown to their jurispru *33 clence; whatever office parliament chose to create was a de jure office. In the states of the American Union, however, we find .written constitutions, limiting the otherwise absolute power of the people to act through the legislative branch of the government. As a consequence of this peculiar feature of our government, a statute, regularly enacted by the legislative branch thereof, may, in express terms, create a public office, or it may authorize a municipal corporation to create one; an incumbent may be appointed in the mode prescribed by the statute, he may qualify, enter upon the discharge of the duties of the office, and continue to discharge those duties indefinitely — possibly for many years — during which he daily performs official acts affecting not only public rights, but private rights of the most sacred character. After all this has occurred, the constitutionality of the statute is successfully challenged, and the statute declared void, and for the first time in the history of the common law its principles must be invoked to ascertain the status of the rights of persons, and of the public, that accrued before the law was declared void.
We think that principle of public policy, declared by the English courts three centuries ag’O, which gave validity to the official acts of persons who intruded themselves into an office to which they had not been legally appointed, is as applicable to the conditions now presented as they were to the conditions that then confronted the English judiciary. We are not required to find a name by which officers are to be known, who have acted under a statute that has subsequently been declared unconstitutional, though we think such officers might aptly be called lide facto officers. ” They *34 actually performed official acts authorized by a statute solemnly enacted by the law making department of the government. Such a statute is presumed to be constitutional. Railroad v. Commissioners of Clinton County, 1 Ohio St., 77. The unbroken current of authority supports this proposition.
Courts in the practical administration of justice should regard the substance of things and deal with conditions as they actually exist. Here are grave and important official acts actually performed by virtue of an office, created under the provisions of a statute, regularly enacted by that branch of the government to which the-power to make law has been delegated by the constitution; there is a clearly established legal presumption of its validity. The public in its organized capacity as well as private citizens has acquiesced in and submitted to their authority. Such circumstances, the majority of the court are of opinion, are sufficient to give such color to their title as to make them defacto officers; but whether they fall within the previously existing definition of such officers or not, their official acts thus performed fall within the protection of that principle of public policy which defends them against collateral attack, and that, therefore, the question of the constitutionality of the statute in question was not before the court of common pleas.

Exceptions sustained.